JONATHAN MILLS MANUF'G CO. v. WHITEHURST et al.[1]

(Circuit Court of Appeals, Sixth Circuit. February 4, 1896.)

No. 331.

**1. ASSIGNMENT OF PATENTS—BONA FIDE PURCHASERS—NOTICE.**

Where an assignment of a patent contains recitals indicating a possible outstanding interest in another party, the assignee is chargeable with notice of every fact in reference to such interest which diligent and honest inquiry would have developed. A defect of title being brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny.

**2. SAME—ASSIGNOR HOLDING AS TRUSTEE.**

A purchaser, who has reason to believe that the party offering a patent for sale holds it either as trustee or agent for a third person, cannot become a bona fide purchaser for value by relying on the statements of the suspected trustee or agent either as to his authority or as to his beneficial ownership. Inquiry must be made of some other person, who will have a motive to tell the truth in the interest of the cestui que trust or principal.

**8. RES JUDICATA—DECREE FOR ASSIGNMENT OF PATENT.**

A bill was brought to compel one S., an inventor of flour-milling apparatus, and others, to perform a contract requiring him to convey to complainant all the patents for flour milling which he should thereafter "obtain" or "procure," and also to annul certain alleged fraudulent assignments, made by him, of various patents, designated by name and number, and "all other letters patent relating to the manufacture" of certain described kinds of milling machinery which the complainant "then owned or controlled, or in which it then had any joint or other interest." The bill prayed a discovery by defendants of all patents or patent interests controlled or owned by the complainant, which, they claimed, passed by said fraudulent assignments, and a conveyance thereof to complainant. *Held*, that the decree properly included a patent, not specifically designated in the bill, which the said S. had obtained by assignment from another, and which was of the description of inventions in which the contract gave complainant a right, and that, consequently, the decree with reference to that patent was responsive to the issues made by the bill, and was conclusive against one who purchased from the defendant pending the suit. 65 Fed. 996, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

The action in the court below was in equity to enjoin the infringement of a United States patent, No. 267,098, issued to Jonathan Mills, November 7, 1882, upon an application filed June 30, 1882, for an improvement in a device for bolting in flour mills, known as the "centrifugal bolt or reel." The bill averred that the complainant, by direct and mesne assignments, in writing, had become the sole and exclusive owner of the letters patent sued on. The bill was filed against M. C. Whitehurst, C. D. Whitehurst, and G. A. Whitehurst, and prayed an injunction, an accounting of profits, and damages. In the original answer, the defendants did not deny the sufficiency or validity

[1] Rehearing denied April 14, 1890.

of the assignments by which complainant traced its title from the original patentee. Subsequently, however, an amendment to the answer was filed, denying that the complainant was the sole and exclusive owner of the patent in suit. At the original hearing, the court below sustained the validity of the patent, and complainant's ownership of the same, and directed that a decree in accordance with this finding should be entered. 56 Fed. 589. Before the final decree was entered, a petition for rehearing was filed, on the ground of newly-discovered evidence showing that the complainant had not title to the patent. The court granted the rehearing (60 Fed. 81), and additional evidence was taken by both sides on this issue. It appeared from this evidence that, after Mills received his patent, on November 7, 1882, he assigned upon January 28, 1883, his patent to the Phœnix Foundry & Machine Works, of Terre Haute, Ind., and that this assignment was recorded June 21, 1884; that the Phœnix Foundry & Machine Works assigned the patent, December 18, 1883, to Myron W. Clark, and that the assignment was recorded June 21, 1884. This assignment was recited to be "in consideration of $1,000 cash in hand, and for a note for $1,000, due in six months, made by Jonathan Mills to the Phœnix Foundry & Machine Works." The assignment included several contracts, interests in patents, and applications, as well as the patent here in suit, together with a lot of personal property. The assignment contained this provision:

"The said Clark agrees to sell the said property, and to apply the proceeds —First, to the payment to said Mills of one thousand dollars; and, second, to the payment of the said notes made by said Mills; and, third, any balance shall be paid to said Mills. And it is not intended that any liability shall attach to the said Clark, except the accounting for moneys received from the sale of the above-mentioned properties, and the said Phœnix Foundry & Machine Works, in assigning said property, guaranties no value thereto."

Accompanying the assignment was this declaration of trust, which was also recorded:

"The property named in the above contract is held by Myron W. Clark as trustee for Jonathan Mills, and as security for the payment of one thousand dollars due him by said Jonathan Mills, which sum the said Mills hereby acknowledges as due and owing, and said Mills hereby authorizes said Clark to retain said sum from the proceeds of sale of same, which sale shall not be made for six months from the date hereof, without the consent of said Mills.

"[Signed]                                            Jonathan Mills.
                                                    "Myron W. Clark."

"I hereby consent to the substitution of Geo. T. Smith in place of Myron W. Clark in the above agreement, and hereby release and discharge said Myron W. Clark from all liability on account of the trust above created.
                                                    "Jonathan Mills."

Upon December 20, 1883, Myron W. Clark made an assignment to George T. Smith of all his right, title, and interest in the patent, and this was also recorded on June 21, 1884. On August 15, 1892, for the consideration of the sum of $1 and other valuable considerations, George T. Smith assigned the patent to Charles Wardlow, and this assignment was duly recorded August 23, 1892. On the 16th day of August, 1892, Wardlow assigned the patent to the complainant, the Jonathan Mills Manufacturing Company, and this assignment was also recorded on the 23d of August, 1892. On July 1, 1891, there was recorded an assignment, undated, from Jonathan Mills, the original patentee of the patent, to the Jonathan Mills Manufacturing Company. In this writing of assignment occurs the following recital:

"And this assignment is in revocation, and made, for the further purpose than those herein above specified, to annul and set at naught a certain assignment by said Mills to Myron W. Clark, dated December 18, 1883, which said assignment was given as collateral security for a loan of one thousand dollars, and said patent now supposed to be held by the Smith Purifying Company, or its assigns; and provided, further, and this assignment gives full, absolute, and complete authority to the Jonathan Mills Manufacturing Company to secure, at its own expense, said patent."

At the rehearing (65 Fed. 996), the defendant introduced a certified copy of a decree in equity of the circuit court for the county of Wayne and the state of Michigan. The record was certified by William May, the registrar of the court, under the seal of the court. The decree was introduced to show that, at the time that George T. Smith made his assignment to Wardlow, in 1892, he had nothing but the naked legal title, and that the real equitable interest and ownership was in the George T. Smith Middlings Purifier Company, of all of which the complainant had notice. George T. Smith was a party to the Michigan decree, and the defendant introduced an assignment—dated June 7, 1893, executed by Eliza B. Smith, George T. Smith; and George W. Weadock, executor of the last will and testament of Charles H. Plummer,—of a number of patents and patent interests, including among others the patent in suit, to Rufus H. Emerson and Zenas C. Eldred, receivers of the George T. Smith Middlings Purifier Company, executed, as recited in the assignment, in accordance with, and in obedience to, the decree already referred to. This assignment was recorded June 16, 1893.

The complainant, for the purpose of attacking the validity and effect of the decree, introduced a certified copy of the bill, answers, and other proceedings of the court in the same cause, together with the decree, making the claim that, in so far as the decree found that George T. Smith acquired and held title to the Jonathan Mills patent, here in suit, in trust for the George T. Smith Middlings Purifier Company, and directing a conveyance or assignment by him to the receivers of that company, it was outside of the issues made by the pleadings in the cause, and was coram non judice, and void. The record shows that the bill was filed August 18, 1880, by Rufus H. Emerson and Zenas C. Eldred, receivers of the George T. Smith Middlings Purifier Company, against Charles H. Plummer, Eliza B. Smith, George T. Smith, and the George T. Smith Middlings Purifier Company. The bill averred that the George T. Smith Middlings Purifier Company was a corporation, organized April 20, 1878, under the laws of Michigan, for the purpose of manufacturing middlings purifiers and other milling machinery relating to the new process milling, and to procure, use, and purchase improvements, inventions, and patents relating to that system of milling; that the original stockholders, of whom George T. Smith was one, by contract, in writing, in consideration of the sum of $250,000, assigned and transferred to the George T. Smith Middlings Purifier Company certain named patents, and "all other inventions and improvements relating to milling and mill machinery for which said George T. Smith should thereafter obtain letters patent," whereby said George T. Smith Middlings Purifier Company became vested with the entire title to all said letters patent, and to all inventions and improvements covered thereby, together with the right to have assigned and transferred to it all other patents which said George T. Smith should thereafter procure for improvements in milling and mill machinery; that said contract was afterwards, on the 12th day of September, 1878, filed for record in the patent office of the United States, and duly recorded; that said George T. Smith was, or claimed to be, the inventor of a portion of, if not all of, the improvements embraced in all of said letters patent, and an expert in milling and mill machinery; that it was regarded by the parties to the contract as essential, in order to secure to said corporation the full benefit of said letters patent, to secure to it all letters patent which might thereafter be obtained by said George T. Smith for improvements affecting the business which it was incorporated to carry on, and the agreement that all such letters patent obtained by said George T. Smith should belong to said corporation was an important consideration in the making of said contract; that, by reason of said agreement, said George T. Smith Middlings Purifier Company became entitled to all letters patent obtained thereafter by said George T. Smith, and during the term of the existence included in the letters patent so assigned and transferred to said corporation or affecting or pertaining to the business which said corporation was organized to engage in and carry on; that Smith, after the making of the first contract named, obtained a number of patents, which are named in the bill,—some of them patents for inventions of his own, others which he obtained in connection with other patentees, and one other, issued to another person, and assigned to him; that, in addition to the letters pat-

ent of the United States so obtained by Smith, he had sundry applications pending in the United States patent office, at Washington, for flour bolts and improvements in milling and mill machinery, the number and particular description of which are now unknown to complainants; that, by virtue of the terms and provisions of the contract aforesaid, each and all of said patents, so obtained by said Smith in his own name, and all of his right and interest in said patents, obtained by him in connection with other persons, became, when obtained as aforesaid, in equity, the property and rights of said George T. Smith Middlings Purifier Company, and so continued until the assignment of said company, hereinafter mentioned; that said Smith, by virtue of said contract, took the legal title to said patents and patent interests in trust for said George T. Smith Middlings Purifier Company, its successors and assigns; that the purifier company, its successors, or assigns, or the complainants, were equitably entitled to have an assignment from Smith of each and all of said applications which he had pending in said patent office for patents or improvements on milling and mill machinery, when the same should be discovered, or proof made to this court; that the entire expense of obtaining all of said letters patent, and the filing and prosecution of said applications, as well as all expenses of every kind incurred in perfecting the inventions covered by said patents and applications, shop room, and labor, whether by hand or machinery, and all charges of every kind or description in connection therewith, had been borne and paid by said purifier company; that it was understood and intended by Smith, when said patents were obtained, and said application filed, that they were so obtained and filed in the interest of said company; that said company had used said patents as occasion required in the prosecution of its said business without any claim or pretense on the part of Smith that it had not a right to do so, or that he was entitled to any compensation therefor; that said Smith was, in the year 1883, elected president of the company, and had the control and management of its business until the 1st day of June, 1890; that he treated the affairs of said corporation very much as if its interests were identical with his own; that the purifier company became insolvent in 1890, and made a common-law assignment to the complainants for the benefit of the creditors; that, afterwards, the complainants were removed as assignees, and appointed receivers of all the lands, tenements, goods, and choses in action belonging to the purifier company; that, as such receivers, they became vested with all the rights and interests of the said company to all the contracts hereinbefore mentioned; that they had a right to demand and have an assignment from said George T. Smith of all the patents obtained by him, or in which he has an interest, as hereinbefore mentioned, and all applications for patents made by him which are now pending, as also hereinbefore stated; that said George T. Smith and Eliza B. Smith, his wife, pretended and claimed that said George T. Smith Middlings Purifier Company, by said George T. Smith, as president and treasurer thereof, on or about the 12th day of November, 1889, by an agreement in writing, in consideration of $3,538.48, as therein expressed, did sell and transfer to said Eliza B. Smith all its right and interest to and for letters patent (then follow some 20 letters patent, by number; not, however, mentioning the patent in suit), and all other letters patent relating to the manufacture of middlings purifiers, centrifugal reels, interclevator reels, or roller reels, and any inventions made by said George T. Smith, which said company then owned or controlled, or in which it then had any joint or other interest; that Eliza B. Smith assigned all the patents and patent interests received under this agreement to Charles H. Plummer, who claimed, by virtue of such assignment, to own all the patents and patent interests legally and equitably owned or possessed by said George T. Smith Middlings Purifier Company and said Eliza B. Smith, or then in the name of said George T. Smith, as well applications as patents; that such claims and pretenses of said Plummer were wholly without foundation, and a fraud upon the just rights of the creditors of said George T. Smith Middlings Purifier Company; that said pretended transfer from said George T. Smith Middlings Purifier Company to said Eliza B. Smith was without consideration, and fraudulent and void as to the creditors of said George T. Smith Middlings Purifier Company, and the stockholders of said company, and was a fraudu-

lent scheme, on the part of the said George T. Smith and Eliza B. Smith, to cheat and defraud the creditors of said George T. Smith Middlings Purifier Company; that George T. Smith was not authorized by the board of directors of said corporation to make said contract; that Plummer had acquired his title to the patents and patent interests thus assigned to him with the full knowledge of the claims of complainants.

The prayer of the bill was that Plummer, Eliza B. Smith, and George T. Smith might make full answer, and set forth and discover any consideration that passed for the transfer of the patent and patent interests mentioned in the contract; that they specifically set forth all the patents or patent interests controlled or owned by the company which they claim passed by said fraudulent assignments, and that all such transfers and assignments be declared null and void; and said George T. Smith might be required to specifically perform the contract hereinbefore first mentioned, and set forth and transfer and assign to the purifier company all the patents theretofore mentioned as being in his name, or in which he has any interest, and all applications for patents pending as herein stated or to the complainants; that Smith might be further directed to discover what further or other applications for patents he had then, or at the date of the said assignment by said George T. Smith Middlings Purifier Company, pending in the patent office of the United States relating to milling or mill machinery, with the date of the filing of the same, and a description of the improvements thereby claimed, and, when so discovered, that he assign the same in accordance with the provision of said first contract; that he discover and set forth any further or other assignments, or attempted assignments, of patent interests, affecting the letters patent, applications, or patent interests hereinbefore mentioned, any or either of the same; and that all such contracts or assignments, when so discovered, that are in conflict with the provisions of the contract first aforesaid, and the contracts between said companies aforesaid, or in fraud of the creditors of said assignor, be adjudged and decreed null and void. Nowhere in the bill was the Mills patent (the one in controversy in this cause) mentioned by name or number, and it was not embraced within either the allegations or prayer of the bill, unless the general expressions of the bill were wide enough to include it.

Subpœna was issued, and personally served on George T. Smith and other defendants. After making a plea to the jurisdiction of the court, which was overruled by the court, each of the defendants filed an answer. The answer of Plummer was filed January 14, 1892. The answer of George T. and Eliza B. Smith appears also, by the record, to have been filed upon that date, but its contents are not disclosed in the record. A replication was filed to both answers, and notice to take proof in open court was filed, and the cause was heard in open court, and proof taken in accordance with the statute of Michigan, on the 21st day of September, 1892, and the decree was entered for the complainants May 10, 1893. The decree found that, among other patents held by Smith in trust for the Smith Middlings Purifier Company, was the Mills patent here sued on, and ordered Smith, his wife, and Plummer's executor to make an assignment of the same to the complainants, which was done, as already stated.

On the 15th day of August, 1892, George T. Smith, at the time he assigned the patent to Wardlow, made the following affidavit:

"State of Ohio, County of Franklin—ss.: George T. Smith, being first duly sworn, says that he has this day offered and agreed to sell, assign, and transfer to Charles Wardlow, in consideration of twelve hundred ($1,200) dollars, a certain invention or improvement in centrifugal bolts, as set forth in letters patent of the United States, and in and to said letters patent, said letters patent being the same granted to Jonathan Mills, November 7, 1882, and numbered 267,098. That said invention or improvement and letters patent are the same heretofore conveyed by Jonathan Mills to the Phœnix Foundry Company, of Terre Haute, Ind., and by said Phœnix Foundry Company to Myron W. Clark, and which were, on or about the 20th day of December, 1883, sold, assigned, and transferred by said Myron W. Clark to said George T. Smith. And said affiant says that he has not made any prior

assignment, sale, or transfer of said invention or letters patent, nor has he granted any license which could affect his right, title, or interest in said invention or letters patent, and that said interest which said affiant has offered and agreed to sell to said Charles Wardlow is free from all prior assignment, grant, mortgage, license, or incumbrance whatsoever. And affiant further says that he has not done any act or deed which could in any manner whatsoever affect his right, title, or interest in and to said invention and letters patent, and that he does not know of anything which could in any manner affect the right, title, or interest in said invention and letters patent, which said affiant has offered to sell to said Charles Wardlow, save and except a certain assignment of said patent heretofore made by said Jonathan Mills to Jonathan Mills Manufacturing Company. Said affiant further says that he has never made any assignment in insolvency or bankruptcy. And said affiant says that this affidavit is made for the purpose of satisfying said Charles Wardlow and his assigns of the validity of the title of said affiant in and to said invention and letters patent. Geo. T. Smith."

"Sworn to before me and signed in my presence this 15th day of August, A. D. 1892.

"[Seal.] N. L. Helphrey,
"Notary Public, Franklin County, Ohio."

This affidavit was offered by the complainant to show Wardlow's good faith in the purchase of the patent. It was stipulated that Charles Wardlow would testify that, at the time of receiving the assignment from George T. Smith, he received the foregoing "warranty affidavit," and that said affidavit was executed in the presence of Wardlow on the day of its date, and was duly acknowledged before the notary whose seal and signature was thereto fixed. Wardlow was not otherwise used as a witness by complainant.

Taylor E. Brown, for appellant.
Geo. J. Murray, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts). We concur with the circuit court in the view that, by the recitals in the assignment of Jonathan Mills to the complainant, the Jonathan Mills Manufacturing Company, the latter was put upon inquiry as to the interest of the Smith Middlings Purifier Company and must be charged with notice of every fact with reference to the company's interest in the patent which diligent and honest inquiry would have developed. It is well settled that, when a purchaser cannot make out his title but through a conveyance which leads to a fact, he will be affected with notice of that fact. When a defect in title is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. He is a voluntary purchaser, and, having notice of a fact which casts doubt upon the validity of his title, the rights of innocent persons are not to be prejudiced through his negligence. Brush v. Ware, 15 Pet. 93, 112, 114; Oliver v. Piatt, 3 How. 333, 410; Cordova v. Hood, 17 Wall. 1. As said by Mr. Justice Strong, speaking for the supreme court in the last-named case (page 8):

"Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself."

The chain of title disclosed by the patent office records, from Jonathan Mills, the original patentee, to George T. Smith, indicated an outstanding equity of some kind in Mills, and an assignment

from Mills to the complainant was necessary to clear any title which it might acquire from Smith. The Mills assignment was, therefore, in the chain by which complainant must assert ownership, and it was charged with notice of the statement therein that the patent was supposed to be owned by the Smith Purifying Company. Indeed, his assignment was made directly to complainant, and authorized it to procure the patent from the company or its assigns. The company, therefore, necessarily, had actual as well as constructive notice of its contents. Now, it is true that the company referred to by Smith was the Smith Purifying Company, while the company which really owned the patent was the George T. Smith Middlings Purifier Company. We cannot suppose, however, that, in the trade, any mistake could have arisen from this difference. Complainant has not called its officers to testify as to what knowledge they had of the existence or nonexistence of a company by either name, or what efforts they made to identify the Smith Purifying Company with an existing company. Even Wardlow, complainant's agent in the purchase, has not been called to state what his knowledge or inquiry was in respect to the matter, although he is the person upon whom complainant relies as the innocent purchaser.

It is common knowledge that, in a manufacturing business of this character, the number of all the corporations engaged throughout the country is limited, and it is a matter of no great difficulty to ascertain the name of every one of them. Certainly, had complainant and Wardlow made inquiry, if they did not already know it, they would have learned that there was such a company as the George T. Smith Middlings Purifier Company in Michigan, and the slightest diligence would have led to inquiry of those who represented it (it was then in the hands of receivers) to learn whether it claimed any interest in the patent. Instead of this, Wardlow and complainant contented themselves with the execution by George T. Smith of the so-called "warranty affidavit." The affidavit, instead of aiding complainants' case, casts suspicion on it, especially when Wardlow is not called to give evidence of his purpose in taking it, or his good faith in the transaction. Kirby v. Tallmadge, 16 Sup. Ct. 349. Inquiry of Smith, from whom the purchase was to be made, certainly did not fill the measure of proper diligence; for he was necessarily interested to establish a clear title in himself. If the Smith Company had any interest in the patent, as Mills suggested, then it was apparent that George T. Smith, who held the legal title, was trustee for the company. It is well established that one who has reason to believe that another is offering property for sale, which he holds either as trustee or agent for a third person, cannot become a bona fide purchaser of the property for value by reliance on the statements of the suspected trustee or agent, either as to his authority, or as to his beneficial ownership of the thing sold. In such a case, inquiry must be made of some one other than the agent or trustee,—of some one who will have a motive to tell the truth, in the interest of the cestui que trust or principal. Trust Co. v. Boynton (decided by this court

at the present term) 71 Fed. 797. If, then, the purifier company was the equitable owner of the patent in controversy, we are fully justified in presuming, from the circumstances, that Wardlow and the complainant might easily have found it out from the receivers of the company, who were then in charge of its affairs and assets.

It remains to inquire whether the company was the real owner of the patent, as between itself and George T. Smith. The only evidence on this subject which defendant introduced was the decree of the circuit court of Wayne county, Mich., and Smith's assignment in obedience to it. Certainly, it cannot be denied that Wardlow and the complainant are privies to Smith, and are bound conclusively by any decree rendered against him, in reference to this patent, and in favor of the purifier company or its assigns, upon proceedings begun before they acquired title from Smith. This need not rest alone on the naked doctrine of lis pendens, but it grows out of the fact that Wardlow and complainant were charged with notice of the litigation, because diligent inquiry in respect to the title suggested by Mills' assignment would have made them actually aware of it. But it is said that the bill upon which the decree was founded did not embrace the Mills patent, and that, though the court had personal jurisdiction of the parties, it had no power to make a finding or order concerning something not submitted to its judicial cognizance by the pleadings; and this fact is also said to free complainant from the burden of notice that the patent here in suit was in controversy there, because it and its grantor acquired title after the pleadings were made up, and before hearing or decree. The general principle contended for by complainant, that a decree must be responsive to the issues made by the pleadings, need not be disputed. Its application and its limitations are clearly set forth by Mr. Justice Brewer in delivering the opinion of the court in Reynolds v. Stockton, 140 U. S. 263, 265, 11 Sup. Ct. 773. But the record of the Michigan suit presents no such difficulty.

In general terms, the bill was filed by the receivers of the purifier company to compel Smith to assign to the company all the patents and patent interests which he had agreed to assign to it by a contract made at the time of its organization, and also to compel a reconveyance to it of all its patents and patent interests which through the fraud of Smith, as its president, and his wife, Eliza B. Smith, and one Plummer, had been conveyed, without consideration, first to Eliza B. Smith, and then by her to Plummer. The contract between Smith and the company required him to convey to it all the patents for flour milling which he should thereafter "obtain" or "procure." If, as the decree finds, Smith held title to the Mills patent in trust for the company, he must have procured it after the date of the contract, in 1878, because the patent was not applied for until 1882; and therefore the jurisdiction of the court was invoked to compel the assignment of this patent by Smith, in accordance with his contract. Smith was required by the bill to set forth, in connection with that contract, all patents in which he had an interest. But it is objected that the word "obtain" refers

only to such patents as Smith should obtain as inventor, and not to those he might obtain by assignment. Some of the language used in the decree might justify this limitation, but the word is used in another part of the bill to include, not only those obtained by him as inventor, but also as joint inventor with another, and also one obtained by him as assignee. In support of the decree, and the court's jurisdiction, an ambiguous description of the subject-matter should, it would seem, receive that construction which will sustain them both.

But the other aspect of the bill—that relating to the fraudulent assignments to Eliza B. Smith and to Plummer—very clearly embraces, by general language, the patent here in suit. The fraudulent assignment embraced, not only many patents by name and number, but also all other letters patent relating to the manufacture of middlings purifiers, centrifugal reels, interelevator reels, or roller mills and any inventions made by said George T. Smith, which said company then owned or controlled, or in which it had any joint or other interest. The last two relative clauses modify, not only Smith's inventions, but also the words "all other letters patent," etc., and therefore, by this assignment, passed to Eliza B. Smith any patent relating to centrifugal reels owned or controlled by the purifier company, or in which it had a joint or other interest. The patent in suit related to a centrifugal reel or bolt, and, as complainant had reason to believe from Mills' assignment, this company had the equitable title to it. The bill was filed to vest title in the receivers of the company of all the patents passing by the assignment to Eliza B. Smith and to Plummer. Hence, it was within the jurisdiction of the court, as limited by the four corners of the bill, to make a finding as to what passed by the fraudulent assignment and to order an assignment of the same to the receivers. The decree found that the Mills patent was one of these, because it found it to belong to the company, though in George T. Smith's name. Smith and his wife were required by the bill to discover and specifically set forth all the patents claimed by them to be included in the assignment made to Eliza B. Smith and by her to Plummer. The record does not show Smith's answer, and, if necessary, we should presume, in support of the validity of the decree, that the Mills patent was one of those discovered by George and Eliza B. Smith in their answer. But, whether it was so or not, the prayer for discovery in the bill gave the court jurisdiction to act with respect to any patent within the description of the prayer for discovery which the evidence disclosed, and to find that it belonged to the company, and to order its assignment to the receivers. We do not doubt that the decree with reference to the Mills patent is responsive to the issues made by the bill, and that it was coram judice.

Objection is made to the mode in which the Michigan decree was proven, because it was not certified in accordance with the act of congress, but only by certificate of the register of the court. It suffices to say that, however formidable this objection might have

been if seasonably made in the circuit court, it cannot prevail here when made for the first time. Not only did complainant not make any such objection in the court below, but it itself introduced a record of the same cause, with the same decree, certified in the same way, in order to show the pleadings which the defendant had not offered. As the Michigan decree and the assignment in accordance therewith carry all of George T. Smith's title to the receivers of the George T. Smith Middlings Purifier Company, the title of complainant to the patent sued on fails, and it becomes unnecessary to consider other questions raised as to the title, or those which have been presented on the merits of the patent and its infringement.

The decree of the circuit court is affirmed, with costs.