ELECTRIC STORAGE BATTERY CO. v. GOULD STORAGE BATTERY CO.

(District Court, W. D. New York. July 9, 1912.)

No. 248.

1. PATENTS (§ 328*)—INFRINGEMENT—MACHINE FOR MAKING GRIDS.

The Madden patent, No. 570,224, for a machine for making grids for secondary-battery plates, claim 2, in view of the machine previously invented by the patentee and covered by patent No. 572,363, application for which was pending at the same time, cannot be given the broad construction its literal wording would imply, but must be construed narrowly and as not covering the machine of the later patent.

2. PATENTS (§ 203*)—ASSIGNMENT—OPERATION AND EFFECT.

A purchaser of an invention for which an application for a patent is pending, with knowledge that the inventor had assigned a previous invention of a similar character to others by an assignment which was recorded, is put upon inquiry and cannot rely on statements of the assignor as to what was covered by the prior assignment.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 290–294; Dec. Dig. § 203.*]

In Equity. Suit by the Electric Storage Battery Company against Gould Storage Battery Company. On final hearing. Decree for defendant.

Augustus B. Stoughton and George S. Graham, both of Philadelphia, Pa., for complainant.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon and Richard Eyre, both of New York City, of counsel), for defendant.

HAZEL, District Judge. The complainant, the Electric Storage Battery Company (for brevity, "Electric Company"), owner by assignment of letters patent No. 570,224, dated October 27, 1896, issued to Albert F. Madden, inventor, for a machine for making grids for secondary-battery plates, brought this suit in equity for infringement of said patent against the defendant, the Gould Storage Battery Company (for brevity, the "Gould Company"), owner by mesne assignments from Abraham Van Winkle and Rufus N. Chamberlain of letters patent No. 572,363, for a battery grid and a machine for producing same, dated December 1, 1896, and issued to the same inventor. The application for complainant's patent was filed in the Patent Office on January 11, 1896, and the assignment thereof by Madden was executed on January 27, 1896, and promptly recorded. The defendant's battery grid and machine were designed and constructed by Madden in the summer of 1895 for Van Winkle and Chamberlain, and on July 30th of the same year the application for the patent was assigned by him to them, but was not recorded until the 19th of November following.

The complainant in this action claims that it owns the broad invention as embodied in claim 2 of its patent, and that when such claim is broadly construed the battery grid and machine for making same used by the defendant in its business at Depew, N. Y., are included

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and are an infringement; while, on the other hand, the defendant claims that, as its machine was first devised and completed by the inventor, its patent, though subsequently granted, was prior, and is superior in point of fact to complainant's.

The record presents an unusual situation in relation to the manner in which the patents separately claimed by the parties and to which they deem themselves entitled were acquired, and in regard to the scope of the claims thereof. Whether only a particular machine was sold to defendant's predecessors, and whether the assignment to it of the earlier invention for which a patent was subsequently granted was void or the patent restricted to the machine, i. e., "the specific thing made or purchased," or whether the patent covered and included a battery grid making machine in a broad sense, and was prior to complainant's patent, or whether complainant's patent was broad, or whether specific and narrow and limited to those features wherein it differs from defendant's machine, are all questions of such importance presented for decision that this court is somewhat in doubt as to a proper disposition thereof.

Prior litigation between the parties to this action has arisen out of the assignment of the inventions by the inventor Madden to Van Winkle and Chamberlain, assignors of the defendant, and to the complainant. An action was brought in the Southern district of New York, wherein the Gould Company was complainant and the Electric Company was defendant, to compel an assignment by the latter company to the Gould Company of the asserted broad claim of patent No. 570,-224, and to enjoin infringement of patent No. 572,363, which it was claimed was for the same machine as that described in complainant's patent. This court decided therein that the machine of the Electric Company was different in various particulars from that of the Gould Company, and the relief demanded in that action was denied on the grounds that the patent described a different machine, that there could be no separation or division of the claims, and that the Electric Company could not be compelled to assign a portion of its invention—some of the claims of the patent, but not all—so as to secure to the complainant in that case that to which it deemed itself equitably entitled. It was held that Lloyd, who acted for the Electric Company in purchasing the later machine and invention—claimed by Madden to be a specific improvement over the earlier, but claimed by defendant to be a machine broadly embodying the use of rotating disks to raise leaves upon a battery plate—though without statutory notice of the prior assignment, was put upon inquiry as he had been informed of the prior machine and invention assigned to Van Winkle and Chamberlain, defendant's predecessors.

It was the theory of the complainant in that action that the earlier Madden invention was the basic invention, while the defendant contended that claim 2 of its patent clearly showed a broad invention—broad enough to include the defendant's machine. Some confusion has arisen, I think, because of the use of the word "defendant" when "complainant" was intended where this court in the prior suit said:

"It is true that a broad construction of claim 2 would seem to indicate that it embodied the defendant's (sic) patented machine, yet considering the differences in the two machines, as pointed out hereinabove, and the different results attained in their operation, a question of grave doubt is raised in my mind on the present record as to whether a broad construction should be given such claim. As this question will doubtless be called to the attention of this court and with reference to the prior state of the art in the infringement suit pending in this district, the scope of claim 2 need not now be determined."

From this quotation counsel, justifiably perhaps, received the impression that the language referred to claim 2 of the Gould Company's patent; but such was not the case, as the court believes that it had in mind claim 2 of the Electric Company's patent, and intended to hold, aside from the fact that 'Lloyd acted for the complainant in purchasing the machine, that, as the Gould Company had not proven that the patents were for the same machines, or that claims 1 and 2 of its patent were basic, no presumption that the earlier invention covered the later arose, and the court, having expressed doubt as to the asserted broad scope of claim 2 of the Electric Company's patent, denied the extraordinary relief demanded in the bill. Such was also the conclusion of the Circuit Court of Appeals which affirmed the decision on substantially the same grounds. 192 Fed. 32.

The questions as to whether Madden sold anything to Van Winkle and Chamberlain except the specific invention of the so-called spinning machine and its product, and as to whether his claimed improvement embodied in the patent under consideration in this case operated by an essentially different method, were left open and undecided. The Circuit Court of Appeals expressed the opinion that, as each party had sued the other for infringement, there was no reason to doubt that the relief to which each was respectively entitled could be obtained in the pending actions—one in New Jersey, and the other in this district.

Complainant now invokes the doctrine of estoppel as to validity, infringement by defendant, and ownership of the broad invention, and asserts that such questions were litigated and determined adversely to this defendant in the former suit. With this contention I am not in entire accord, and think that a solution of the problems presented requires interpretation and construction of claim 2 together with an examination of the evidence relating to the denied infringement.

[1] The first questions to suggest themselves on this record arise from the differences between the two machines as disclosed by the descriptions, and in regard to the scope of claim 2 of the patent in suit. Claim 2 reads as follows:

"2. A machine for making secondary-battery grids, comprising the combination of, a blank-holder, cutters on each side of the holder, means for reciprocating one of said parts in respect to the other, devices for rotating the cutters, and mechanism for feeding the sets of cutters toward each other, substantially as described."

That it broadly describes the machine used by the defendant without specifying the details of operation is undoubted. It is perfectly obvious on acquaintance with the drawings and specifications that the

two inventions closely resemble each other. Each includes a blank-holder, cutters on each side of the holder, and means for reciprocating the blank between rapidly revolving rollers or cutters. In their operation the rollers or cutters move towards each other, one from above, the other from below, the blank, so as to be imbedded in the opposite surfaces of the blank without removing any lead but merely displacing it from the grooves or indentations. The adaptations produce a secondary battery with raised portions having the appearance of thin leaves or shelves placed close together and affording an increased surface for coating with active material over that possessed by the battery prior to the operation. According to the specification of the patent in suit, the lead blank may be simply grooved or indented on opposite sides to a predetermined depth, or, if desired, may be slotted clear through.

The testimony of Prof. Main points out that the defendant's machine differs from complainant's in that the cutting disks rotate at a different rate of peripheral speed from that of the blank, which moves forward and backward between the rolls with the result that an excessive amount of frictional heat must be decreased by constantly pouring oil over the plate as it is operated upon by the rolls, while in complainant's machine the linear velocity of the contacting surfaces is nearly the same, and there is an absence of frictional heat. In defendant's machine the cutting rolls revolve continuously in the same direction as the blank is operated upon, and the disks have smooth edges; while in complainant's the cutting disks are notched and reciprocate with the blank. Pressure from compressed air drives the cutting disks of the defendant's machine into the lead blank upon which they operate, while in complainant's they are fed towards each other by a feed-screw device. Although the machine of defendant does not in all particulars correspond to the description of patent No. 572,363, as, for instance, the disks in Madden's first machine are driven by pressure from weights bearing on levers and links, while the defendant has substituted pneumatic pressure, yet the application of such pressure is not thought different in principle from that of the weights; the results attained in each instance being the same. There are other differences between defendant's present machine and the machine described in its patent; yet such differences, the evidence preponderatingly shows, were modifications which did not essentially alter the method of operation by which the result was achieved.

The differences between the complainant's and defendant's machines of distinguishing importance and which bear on the modus operandi are the variance in the cutting disks, the manner of their rotation, and the pressure or method of feeding by which they are imbedded in the lead blank. Both patents were issued on applications pending in the Patent Office at the same time, and the presumption that they were for machines which were patentably different is fortified by the proofs. D'Arcy v. Staples & Hanford Company, 161 Fed. 733, 88 C. C. A. 606; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. Indeed, complainant's expert witness Winter in the former suit substantially testified that there were essential differences between the

two patents in spite of the asserted broad claim 2 in suit, and he thought that such claim was not of such scope as to include Madden's prior machine.

After careful consideration I adhere to my original view, intimated in the ownership suit, namely, that there are such fundamental differences between the two inventions by which the battery plates are produced that a broad construction of claim 2, such as its literal wording would seem to imply, should not be accorded to it. The said claim must be read in connection with the drawings and specification and the information gained therefrom, together with the particular nature of the case, all of which seem to indicate that an interpretation should be given limiting it to the particular machine described in the specification, as the parties obviously intended. Madden was not a pioneer in the art of making battery plates. In patent No. 544,180 to Lewis there are found several of the elements of claim 2, i. e., two rotary cutting rolls (the cutter being notched) which are moved towards each other, while the blank upon the upper and lower surfaces of which the cutting rolls operate is passed between them. The lead is cut through, and the cut portions remain attached to the plates. The Lewis machine is without the blank-holder, and in that respect differs in an important particular from the Madden inventions.

[2] In view of the satisfactory evidence establishing Lloyd's knowledge of the prior Madden invention assigned to Van Winkle and Chamberlain, it necessarily follows that the complainant derived from Madden no greater title than he had at the time of the consummation of the transaction. Complainant, from November 19, 1895, when the assignment to Van Winkle and Chamberlain was recorded, must be deemed to have had constructive notice thereof, and was bound to take the prior invention into consideration, and could not supinely rely on Madden's representations that he had merely assigned the specific machine reserving to himself that which was basic. Jonathan Mills Mfg. Co. v. Whitehurst et al., 72 Fed. 496, 19 C. C. A. 130; Cordova v. Hood, 17 Wall. 1, 21 L. Ed. 587; National Cash Register Co. v. New Columbus Watch Co., 129 Fed. 114, 63 C. C. A. 616. He may have supposed that he retained the broad invention, and had not by his prior contract divested himself of it; but it clearly was the duty of the complainant to make further inquiries. Walker on Patents (4th Ed.) 246; Robinson on Patents, vol. 2, §§ 775, 776.

Complainant also asserts title to the broad invention by purchase from the Accumulator Company in whose employ Madden was in the year 1893 under an arrangement that inventions relating to grids produced during his employment were to become the property of his employer. The lead cylinder in evidence is shown to have been purely experimental. It was made by cutting disks mounted on a shaft and which were fed towards and away from the surfaces of a sectional lead pipe upon which ridges were raised. Complainant's evidence is thought insufficient to show that Madden conveyed to the Accumulator Company, while in the latter's employ, any rights in connection with his lead cylinder which he subsequently delivered to Chamberlain in connection with the agreement of June 10, 1895, for the purpose of show-

ing the size and depth of the grooves or shelves on the surface of the pipe.

Complainant further contends that the transaction between Madden and the predecessors of the defendant related simply to the sale of a specific individual machine, that the broad invention for such machine was subsequently assigned to complainant, and that, according to section 4899 of the Revised Statutes (U. S. Comp. St. 1901, p. 3387), the defendant merely had the unrestricted right to use such machine, but not to duplicate it. The evidence does not substantiate this contention, but shows the transfer to the Gould Company of a machine embodying Madden's original conception of the invention covering such machine. To give complainant's patent—considered by the patentee an improvement over his first invention—an interpretation which would make complainant's machine the basic machine would require me to hold that it is anticipated by Madden's first invention. Without deeming it necessary to discuss any other contentions of counsel, or features of the respective patents and their asserted different modes of operation, or without attempting to define the so-called spinning process as distinguished from a grid rolling process, I have reached the conclusion that complainant's patent must be limited and narrowly construed.

The unqualified terms "cutters," "means for reciprocating one of said parts in respect to the other," and a "mechanism for feeding" said cutters, elements of claim 2, are limited to cutters which reciprocate in their operations on a lead blank as distinguished from a constant rotation of the cutters in the same direction, and to a feeding mechanism consisting of a feed screw for moving cutters towards each other. Under this narrow construction, which the evidence is thought to require, the defendant Gould Company has not appropriated complainant's machine for secondary-battery plates or its process for producing same, nor infringed claim 2 in controversy.

A decree may be entered dismissing the bill, with costs.