CONCETTA SAGONE, as Administratrix of the Estate of GIACOMO SAGONE, Deceased, Respondent, v. DAVID C. MACKEY, Appellant.

**Principal and agent — when agent of surety company who received moneys for company not liable for such moneys which the company refused to pay after the agency had terminated.**

Defendant, who was agent for a surety company, by the consent of his principal deposited moneys received by him for his principal in a bank account which stood in the name of himself and a former partner, then dead, as managers, transmitting such moneys to his principal, usually at the end of the month. Plaintiff placed in the hands of the defendant the moneys, to recover which this action was brought, in order to secure such principal for its obligations upon a bond given by it on plaintiff's behalf, as an administratrix, such moneys passing into the bank account of defendant and there was no understanding or arrangement that the identical fund was to be preserved intact or that it was to be placed in a special account. The defendant's principal refused to repay these moneys to plaintiff after defendant's agency had terminated and this action was brought against defendant to recover them in conversion. *Held*, upon examination of the evidence that the facts are not sufficient to sustain a judgment for plaintiff.

*Sagone* v. *Mackey*, 172 App. Div. 192, reversed.

(Argued January 30, 1919; decided February 25, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 20, 1916, which reversed a determination of the Appellate Term reversing a judgment

of the Municipal Court of the city of New York in favor of plaintiff and granting a new trial and affirmed said judgment.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Ewen* for appellant. The defendant received the money in question as agent for a disclosed principal while acting within the scope of his authority, and the principal alone is liable for its return. (*Austin* v. *Rawdon,* 44 N. Y. 63; *Colvin* v. *Holbrook,* 2 N. Y. 126; *Matter of Flaherty* v. *Milliken,* 193 N. Y. 564; *Costigan* v. *Newland,* 12 Barb. 456; *Cooper* v. *Tim,* 16 Misc. Rep. 372; *Hall* v. *Lauderdale,* 46 N. Y. 70; *Fisher* v. *Meeker,* 118 App. Div. 452; *Cohen* v. *Barry,* 108 N. Y. Supp. 574; *Manley* v. *Stayner,* 20 J. & S. 537; *Iserman* v. *Conklin,* 21 Misc. Rep. 194; *Middleworth* v. *Blackwell,* 85 App. Div. 613; *Finnegan* v. *Geoghegan,* 111 N. Y. Supp. 656; *Levine* v. *Field,* 114 N. Y. Supp. 819; *Breid* v. *McVickar,* 31 Misc. Rep. 793.) The deposit of trust funds by a fiduciary in his individual account is not a conversion thereof. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Matter of Barnes,* 140 N. Y. 468; *Duffy* v. *Duncan,* 32 Barb. 587.) No cause of action for conversion was proven. (*Matter of Barnes,* 140 N. Y. 468; *Jones* v. *Gould,* 123 App. Div. 236; *Hall* v. *Lauderdale,* 46 N. Y. 70; *National Park Bank* v. *Seaboard Bank,* 44 Hun, 49; *Mowatt* v. *McLellan,* 1 Wend. 173; *LaFarge* v. *Kneeland,* 7 Cow. 456; *Ledwith* v. *Merritt,* 74 App. Div. 64; 174 N. Y. 512; *Van Alen* v. *Am. Nat. Bank,* 52 N. Y. 1.)

*Samuel F. Frank* for respondent. Mackey received into his possession plaintiff's money " to be held for further deposit " for her in some depository, subject only to the surety company's " joint control." Until such " further deposit " Mackey was personally the

depositary and a fiduciary of the fund in question. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 112; *People ex rel. Zotti* v. *Flynn,* 135 App. Div. 276; *Morris* v. *Windsor Trust Co.,* 213 N. Y. 27; *People* v. *City Bank,* 96 N. Y. 32; *Strauss* v. *Tradesmen's Bank,* 122 N. Y. 379; *Britton* v. *Ferrin,* 171 N. Y. 235.) By using up all the funds in that account for his own personal uses, Mackey consumed and misappropriated plaintiff's fund so identified. (*Smith* v. *Hall,* 67 N. Y. 51.) Title to the fund did not pass to the surety company immediately upon Mackey's receipt thereof, because it was not money he had collected for the surety company or to be paid over to the surety company. It was a fund which was the property of the plaintiff, always retaining its trust character, which neither Mackey nor his principal could take; all either of them could do was " to hold " it for the plaintiff. It is, therefore, immaterial whether Mackey was the agent of the surety company, or that he came into possession of the fund by reason of that fact. Being in possession of it, knowing it was not the money of the surety company, but of the plaintiff, and being " held " for her, he used up the fund thus representing her property. (*Colvin* v. *Holbrook,* 2 N. Y. 126; *Waterbury* v. *Westervelt,* 9 N. Y. 604; *Fisher* v. *Meeker,* 118 App. Div. 454.)

HISCOCK, Ch. J. This action is brought for conversion of certain funds. At the time of the occurrences involved the defendant was the agent in New York city of the Illinois Surety Company, a foreign corporation engaged in the business, amongst other things, of furnishing bonds for administrators and guardians. The fact that the surety company was the principal acting through defendant as its agent was amply advertised and made fully apparent. As such agent the defendant was accustomed in behalf of his principal and in its name to collect pre-

miums and receive moneys deposited with it as indemnity against liability on bonds which it issued for various people. By the full and express consent of the principal, as established both by uncontradicted evidence and by offers of proof which were rejected and, therefore, must be considered in behalf of defendant upon this appeal, the defendant deposited moneys thus collected and received for and on behalf of his principal in a bank account which stood in the name of himself and a former partner, then dead, as managers. From this account he was authorized to draw for his own benefit the amount allowed for his commissions and from which he was required to pay the expenses of the agency. Apparently from moneys which came to him there was sometimes retained without deposit sufficient cash with which to meet petty items of office expense. The balance of the amounts collected in behalf of his principal by defendant for premiums over and above the sum which he was entitled to draw and use as aforesaid, was remitted to his principal usually at the end of each month. Sums received by it through him as indemnity against liability as above stated were sometimes remitted to the surety company without being deposited in the foregoing account, as we understand the evidence, and sometimes they were not.

The plaintiff procured the surety company through defendant to issue a bond for her as administratrix and when as such she collected $1,500, such sum was delivered to the defendant, less between five and six hundred dollars retained by her as her individual share of the amount thus collected. At the time this amount was thus brought to the defendant it was understood and expected that the plaintiff was to procure herself to be appointed general guardian for two children to whom belonged the balance of the fund, and that then a bond was to be furnished for her as such general guardian and the amount left with

defendant deposited in a special account in a specified bank, and plaintiff subsequently came to defendant's office to perfect such arrangement. When, however, upon her request the money left with the defendant was produced to her she changed her plans and the money was left with defendant pending some arrangement to be made for transmitting the same to Italy without the appointment of herself as such guardian as aforesaid. This balance of about $900 which was thus offered to her and which she decided not to take was left in a general way with defendant pending some indefinite arrangement to be made in the future and there was no understanding or arrangement that the identical fund was to be preserved intact or that it was even to be placed in a special account. As a matter of fact it is assumed and we think must be that it was passed into the account maintained by the defendant as agent, to which we have referred.

In all of these transactions the evidence shows conclusively and beyond question or debate that the plaintiff was dealing with the Illinois Surety Company through defendant as its agent and that he was not in any sense acting as principal.

The occurrences last detailed took place on August 25th and in the following December defendant's agency for the surety company was terminated, and apparently this was done under such circumstances of dissatisfaction and friction that the surety company refused to repay to the plaintiff the moneys thus left with its agent and has been potential in procuring this litigation to be started against the latter to recover in conversion for the moneys left with him as aforesaid. We search in vain for any facts upon which there may be founded a judgment against him for such conversion.

We shall pass the proposition which certainly may be argued with much force that the final arrangement under which plaintiff left her moneys with defendant was

that of a simple deposit creating the ordinary relation
of creditor and debtor and assume that the surety com-
pany held them in a fiduciary capacity.  Even so, in
the absence of some special agreement it was not com-
pelled to hold the identical moneys or even to deposit
them in a special account.  It had the right to deposit
them in a general account with other moneys.  This
method was doubtless subject to certain risks, but it did
not amount to a conversion.  (*Matter of Barnes*, 140
N. Y. 468; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.)
And of course a different aspect was not given to these
acts because the surety company permitted these moneys
temporarily to be deposited in an account maintained
for it by and in the name of its agent.  Furthermore,
it is obvious that an agent would not ordinarily become
personally liable for conversion to a third person because
in behalf of his principal he performed acts and carried
out a course of dealing which it was lawful for the principal
to perform and carry out.  If the principal would not
become liable for conversion because of the deposit
of fiduciary moneys in a general account, certainly under
ordinary circumstances the agent through whom this
deposit was made and in whose name the account was
kept would not become personally liable in the place of
the principal.

It is, however, claimed, so far as we are able to under-
stand it, that the defendant has been guilty of con-
version because he has exceeded his authority and used
for his personal benefit the moneys which were received
from plaintiff.  It being permissible for the surety
company to deposit the funds received from plaintiff in
the general account without being guilty of conversion,
I think it is at least debatable whether the company
would have become guilty of conversion if it had used
the balance in such account for its business uses so long as
it retained in some other account sufficient funds with

which to meet its obligations. If it could have used the balance in such account for the purpose of meeting its business engagements with defendant without being guilty of conversion, the defendant himself would not have been guilty of conversion because he received or used the balance in the account in a manner authorized by the surety company.

Assuming, however, that the defendant would have been guilty of conversion if he had used in his business as authorized by his principal the balance in the account kept by him as agent, including the deposit of the moneys of the plaintiff, there is no intelligible evidence that he did any such thing. Plaintiff's moneys were finally left with the surety company on August 25th, but for some reason they do not seem to have been deposited in the account kept by the defendant until September 30th. There is no evidence that defendant drew from this account for his own uses except to the amount due to him for commissions and there is no evidence that his drafts for such purpose ever reduced the account below a sum which would leave it good for the amount due the plaintiff. The general custom was that each month after the defendant had drawn the amount due to him for commissions, a statement and remittance covering the balance in the account was sent to the surety company. There is some indefinite evidence that sometimes defendant remitted to the surety company sums left with him as agent as against bonds which had been issued and that sometimes he did not. As already stated we interpret the rather loose evidence on this subject as meaning that sometimes special remittances were made to the surety company for such deposits and do not regard it as contradicting the other evidence which was given by the same witness, that the custom was to remit each month the balance of the general account kept by defendant after withdrawing the sums to which he was entitled for

commissions. There is no evidence to rebut this testimony in respect of the general custom followed by the defendant in dealings with his principal or to show that in making these remittances there was excepted and retained in his possession the moneys left with him by plaintiff. It is true that there is evidence that when he left the employ of the surety company in December there was a balance in the account of about $11,000, but it appeared by other testimony which has been assumed to be reasonable and truthful, although given by the defendant, that subsequently and before the commencement of this action he paid to the surety company an amount equal to this balance. Independent of this latter evidence however, there is nothing to show that this balance was not created by sums deposited in the account subsequent to the date when the moneys belonging to plaintiff were deposited and that the remittances made by the defendant to his principal did not exhaust all balance in the account in favor of the principal down to and including the sum belonging to plaintiff deposited in said account. If defendant has remitted to his principal these moneys he received and held for it he certainly is not subject under the circumstances of this case to a claim of conversion.

If plaintiff was to succeed in charging defendant with conversion of moneys paid knowingly and undoubtedly to him as agent for a known principal on the theory that he had retained these moneys and used them in an unauthorized manner for his personal benefit, that theory ought to have been sustained by reasonably clear and definite testimony and such testimony we do not find in the record before us.

Therefore, I conclude that the views of the Appellate Term were right and that the judgment of the Appellate Division should be reversed and the determination of the Appellate Term affirmed, with costs in this court and the Appellate Division to appellant to abide event, the date

of a new trial to be fixed by the Appellate Term in case the parties are unable to agree.

COLLIN, CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.