## In re HARRIMAN SECURITIES CORPORATION.

### No. 57802.

District Court, S. D. New York.
Feb. 19, 1935.

Zalkin & Cohen, of New York City, for trustee.

Wachtell, Manheim & Grouf, of New York City (Samuel R. Wachtell and Harold J. Manheim, both of New York City, of counsel), for Province of Upper Austria.

PATTERSON, District Judge.

The dispute is between the trustee in bankruptcy of Harriman Securities Corporation and the Province of Upper Austria as claimant of a fund. The referee decided in favor of the province, and the trustee has brought the matter here for review.

The facts are undisputed. In November, 1931, the Liberty National Bank loaned $45,-000 to J. & J. Stolts, Inc., taking a negotiable demand note signed by the Stolts concern and indorsed by Alma & Co. As collateral security for the note, Alma & Co. delivered to the bank certain bearer coupon bonds of the Province of Upper Austria.

The bonds were the property of the province, and were held by Alma & Co. for safekeeping. The bank, it is conceded, took the bonds innocently and for value and acquired a valid lien on them for the amount of its loan to Stolts. In August, 1932, the bank sold and assigned the Stolts note, with the collateral security, to the bankrupt. The province had already notified the bank that it claimed ownership of the bonds and coupons, and it gave similar notice to the bankrupt. This claim was disputed by Alma & Co.

The contest here arises over the collection by the bankrupt of the coupons due in June, 1932. The bankrupt sent these coupons to the Harriman National Bank for collection. They were so collected, in the sum of $4,762.50, and the Harriman National Bank sent the $4,762.50 to the bankrupt in the form of two cashier's checks payable to the bankrupt. The bankrupt did not cash these checks, but retained them until after the insolvency and closing of the Harriman National Bank. The province was advised that the proceeds of the coupons were being held in a special account.

The bankruptcy of the Harriman Securities Corporation occurred in July, 1933. The trustee in bankruptcy found among the assets the $45,000 Stolts note, on which there was then an unpaid balance of $10,000, along with the following as collateral security: The bonds with coupons of December, 1932, and subsequent dates attached, and the cashier's checks for $4,762.50 representing the coupons of June, 1932.

Upon this state of facts, the province brought a petition in reclamation, citing both the trustee and Alma & Co. A consent decree was entered. It was adjudged that the province was entitled to the bonds (with coupons of December, 1932, and subsequent dates attached), subject to the lien of the trustee for the unpaid balance of the Stolts note; that the trustee should deliver the bonds to the province against payment by the latter of $5,367.50, the amount admitted by the province as owing by Stolts, and against deposit with the trustee of the further sum of $4,862.50, representing the difference between the amount claimed by the trustee as due on the Stolts note and the amount conceded by the province as due. By the decree, the deposit of $4,862.50 was to be held by the trustee subject to future determination by the court; if it should be decided that the amount due on the Stolts note was $10,000 and interest from Septem-

ber 1, 1933, as claimed by the trustee, then the trustee was to keep the deposit and the province was to have the two cashier's checks representing the June coupons; on the other hand, if it should be decided that the unpaid amount on the Stolts note was only $5,367.50, as claimed by the province, then the trustee was to repay the deposit to the province and was to keep the cashier's checks. It appears that later on the trustee assigned to the province the claim on the cashier's checks, without prejudice, and dividends received on such claim have reduced the amount in the special deposit and now in dispute to the sum of $1,619.35. Upon later hearing the referee made an order awarding that sum to the province.

I am of opinion that the referee's order cannot be supported. Stripped to bare bones, the case is one where the bankrupt held a valid note of the Stolts concern, secured by valid pledge of negotiable bearer bonds. The bonds did not belong to Stolts, as the bankrupt well knew; they were the property either of Alma & Co., who pledged them, or of the province. The position of the bankrupt as pledgee of these bonds with attached coupons was unassailable. The bankrupt was entitled to hold them for the unpaid balance of the Stolts note. These propositions were covered by the consent decree and are not now controverted by the province.

What then was the unpaid balance on the Stolts note at the time when the province obtained the bonds? The note was in possession of the bankrupt. According to the record of payments on the back of the note, the note was unpaid to the extent of $10,000 and interest from September 1, 1933. The note and indorsements of payments constitute satisfactory evidence of what the unpaid amount was. Simon v. Krimko, 139 App. Div. 187, 123 N. Y. S. 697; Levey v. Henderson, 177 Cal. 21, 169 P. 673. This again the province does not deny. Indeed, in the agreement between the province and the Stolts concern of September 14, 1933, it was recited that the unpaid balance of the loan as of September 1, 1933, was $10,000. The argument of the province now is that the proceeds of the June coupons in the amount of $4,762.50 must be deemed as matter of law to have been applied in reduction of the note, thus bringing the unpaid balance down to $5,237.50; this not because of any actual application of this fund against the note or any design or effort by the bankrupt to apply it, but because, it is said, the bankrupt converted these proceeds by keeping them in its own name instead of in a special account.

The argument is a labored one. For one thing, the bankrupt did not convert the proceeds of the June coupons by keeping them in the form of cashier's checks running in its own name. The criticism is that the cashier's checks should have borne some notation that the bankrupt held them as pledgee; else there is a conversion. But it may be doubted whether so rigid a rule would be applied in New York in the case of a strict trustee, and it is by the law of New York that conversion or no conversion is to be judged. In re Barnes, 140 N. Y. 468, 35 N. E. 653; Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; Sagone v. Mackey, 225 N. Y. 594, 122 N. E. 621; Clarke v. Public National Bank & Trust Co., 259 N. Y. 285, 181 N. E. 574. It certainly does not govern the case of a mere pledgee who collects interest on collateral security. See Ritchie v. Burke, 109 F. 16 (C. C. Ohio); Rich v. Boyce, 39 Md. 314; Donnell v. Wyckoff, 49 N. J. Law, 48, 7 A. 672.

But even if the premise be granted that the retention of the cashier's checks in the bankrupt's own name was a conversion, it by no means follows that such retention must as matter of law be viewed as an application of these checks against the principal debt. The debt was not then due, and the pledgee knew that the coupons were not the property of the debtor. Under such conditions the pledgee would ordinarily have no right to apply the coupons or their proceeds toward payment of the debt until after default. Farwell v. Importers' & Traders' Nat. Bank, 90 N. Y. 483, 489. And whether or not the right of application prior to the debtor's default was accorded to the bankrupt by the clauses in fine print on the Stolts note, the fact is that the bankrupt made no effort to apply the proceeds of the coupons to reduce the Stolts note and asserted no such right. If the bankrupt converted the proceeds by failing to have the cashier's checks labeled as held by it as pledgee, the effect would be merely that it became liable to the province in tort or quasi contract in the sum of $4,762.50. The liability of Stolts to the bankrupt at $10,000 would not be reduced. There is force in the trustee's contention that what the province is in reality trying to accomplish in this proceeding is to set off the bankrupt's claim against Stolts on the note and a claim of

its own against the bankrupt for conversion, thereby obtaining on its own claim payment in full instead of a dividend.

The province was entitled, on payment of the $10,000 still owing on the Stolts note, to a surrender of the bonds and coupons attached, and also to a surrender of the cashier's checks. If it saw fit to press a claim for conversion in respect of the cashier's checks, it might, in lieu of taking them, file a general claim against the bankrupt estate for $4,762.50. In no event was it entitled, over the trustee's protest, to redeem the property held as collateral security by payment of less than the $10,000 and interest still unpaid on the Stolts note.

The order of the referee will accordingly be reversed. The balance of the fund held in special account under the terms of the consent decree will be awarded to the trustee in bankruptcy.