CHARLES E. ALLEN, administrator *de bonis non, vs.* FOURTH NATIONAL BANK.

Suffolk.     March 21, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Bank. Trust,* Constructive. *Executor and Administrator. Fraud. Equity Jurisdiction,* For an accounting. *Equity Pleading and Practice,* Appeal, Master's report.

In a suit in equity, by the administrator *de bonis non* of an estate against a bank in which a former administrator of the estate had kept funds of the estate, for an accounting as to certain of the funds which, it was alleged, the former administrator misappropriated under such circumstances that the defendant was chargeable as a constructive trustee, it appeared that the bank had notice of the fact that the money in the account belonged to the estate, that the administrator also had a personal account in the same bank, that the personal account was overdrawn on certain occasions and that in each instance on the bank day next succeeding that of the overdraft the administrator deposited with the defendant a check on the account of the estate and also checks drawn upon other sources more than sufficient in amount to take up the overdraft. A master to whom the suit was referred found that the defendant had no actual knowledge or suspicion that the administrator was misappropriating funds of the estate and that, by reason of the fact that the deposits of checks drawn on sources other than the funds of the estate were more than sufficient in amount to take up the overdrafts, the plaintiff had not shown that the administrator had used funds of the estate to pay his debts to the bank created by the overdrafts. The evidence was not reported. *Held,* that the findings of the master could not be reversed, and that the defendant therefore was not bound to account for the amount of the checks.on the account of the estate deposited to the administrator's personal account on the days following the overdrafts.

In the same suit it appeared that on five occasions checks of the administrator on his personal account were certified by the defendant when such certification would not have been possible if the administrator had not made a deposit on the same day in his personal account of a check improperly drawn by him on the account of the estate. The master found that on and after a date about a month previous to the last but one of the certifications, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such

facts as reasonably would lead it to suspect the misappropriation by the administrator of the funds of the estate, but that at no time did it have actual knowledge or suspicion as to such misappropriations. *Held,* that the defendant was not bound to account to the plaintiff for the amount of the checks on the account of the estate which made possible certification of the checks on the administrator's personal account.

The defendant also was held not to be bound to account for the amount of a check drawn by the administrator upon the account of the estate and deposited in his personal account to make good a check on his personal account which he had delivered to the defendant to take up a personal draft upon him sent to the defendant by a bank in another State for collection.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 8, 1908, by the administrator *de bonis non* of the estate of Albert H. Bird, to recover the amount of certain checks drawn on the defendant and on the Eliot National Bank, the American National Bank, the Commercial National Bank and the City Trust Company, by one William L. Baker, as administrator of the estate of the plaintiff's intestate, to the personal order of Baker, indorsed by him and deposited in his personal account with the defendant. The prayers of the bill were that the defendant might be adjudged a trustee of the proceeds of such checks, and might be compelled to account for such proceeds.

The case was referred to a master, who found the following facts among others:

Between January 8, 1904, and March 17, 1906, Baker deposited with the defendant in an account in his name as administrator of the estate of Albert H. Bird by eleven deposits $24,792.96. All of these deposits were of money belonging to that estate for which he was accountable as administrator. The defendant had notice of this by the opening and carrying of the account as "Wm. L. Baker Adm. Est. of Albert H. Bird."

On April 18 and December 29, 1905, Baker's personal account with the defendant was overdrawn. On the next succeeding bank day after each overdraft occurred, he made deposits to that account consisting of checks drawn on his administrator's account and checks drawn on other sources. In each instance the checks drawn on other sources were more than sufficient to take up the overdraft. The master found that, by reason of the fact that the deposits of checks drawn on sources other than the funds of the administrator's account were sufficient in amount to repay the overdraft, the plaintiff had not shown that such overdrafts

were repaid by deposits of checks drawn on the administrator's account.

At times Baker had checks upon his personal account certified. Sometimes on the same day as and sometimes on the day before the certification, he deposited with the defendant checks, drawn by him upon his administrator's account with the defendant or checks drawn by him upon his account as administrator for the same estate in other banks, sufficient in amount at least to make certification possible.

When a customer of the defendant wished a check of his certified he presented his check to the discount clerk for certification. That clerk inquired of the bookkeeper in charge of the ledger on which that customer's account was carried as to whether he had a sufficient balance to his credit to warrant the bank in certifying the check. If there was such a balance, the discount clerk made out a charge memorandum against the customer, stamped a certificate on the check, had the certificate signed by an officer of the bank and then delivered the check to the customer. The charge memorandum was handed to the paying teller, who made a note of it and passed it to the bookkeeper who kept the customer's account. That bookkeeper charged the customer with the amount of the memorandum and noted on the ledger that the charge was on account of a certified check. When the customer's account was so charged the amount of the charge was credited to an account called the certified check account, and when the check certified was paid the last named account was charged therewith. It would happen frequently that when a depositor presented a check for certification the balance to warrant the certification was made up of a deposit, made on the same day, without which the certification requested would have been refused.

The defendant is a national bank, and the federal laws with regard to certification forbid the certification of checks for a depositor unless there are actual funds in the account where the check is certified. For this reason, and for the protection of the bank against loss, care was exercised by the defendant to ascertain the true state of an account, and in some cases extraordinary care was used, the extent of the investigation depending upon who the depositor was.

The dates of the certifications of Baker's checks upon his personal

account made possible by the deposit in the personal account of checks on the Bird estate account were February 16, April 17, April 20, 1905, and March 19 and 23, 1906.

The master found, as to the examination of the condition of Baker's personal account which was made before the certification of his personal checks, that "there was no evidence whatever, except upon one occasion hereinafter referred to, that the defendant ever examined into the nature of the deposits so made by Baker to ascertain whether or not they were the equivalent of cash."

The "one occasion" referred to above is described by the master as follows: "At some time while Baker had these deposits with the defendant, the bookkeeper who had charge of the ledger in which Baker's individual account was kept became aware that Baker was transferring funds from the Bird estate account to his own. He spoke to some one in the bank about this; but to whom he spoke, or what he said, I cannot determine. This evidence did not satisfy me that this bookkeeper suspected, much less knew, that Baker was misappropriating funds of the Bird estate. On February 21, 1906, this bookkeeper had occasion to examine the deposit made by Baker to his own account that day, consisting of a $4,000 check on the Bird estate account, and put the letters 'O.K.' after the entry crediting Baker for its amount. There was no evidence to show why he examined this deposit. I infer that he must have satisfied himself as to the source of the deposit, and in the course of so doing seen the check deposited. Baker was charged on that day with a check for $1,800 on his individual account."

A draft for $3,000 dated Uniontown, Kentucky, March 20, 1906, drawn by one George M. Gilbert upon Baker, payable to the order of the Uniontown Savings Bank at the defendant bank, was presented to the defendant on March 23, 1906, for payment. On that day Baker drew a check for $3,000 upon his individual account with the defendant, payable to the order of the defendant, and passed it to the defendant's note teller. On the same day he drew a check upon his administrator's account with the defendant for $4,000 and deposited it in his individual account. Without this deposit his check for $3,000 upon his individual account would not have been good. The defendant received the check for $3,000, charged it to Baker's personal account and credited the

amount of it to the National Bank of Commerce of New York, which had forwarded the draft to it.

The master further found that, "on and after February 21, 1906, when Baker deposited to his individual account a check for $4,000 drawn on the Bird estate account, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, checks to his own order on the Bird estate account, was using without authority funds of the Bird estate for his own private purposes;" but that "at no time did the defendant have any actual knowledge or suspicion whatever that Baker was using without authority the funds of the Bird estate for his own private purposes, and the defendant was not privy to his so using those funds for such purposes." He also stated that it seemed to him that the case was governed by the decision in *Allen* v. *Puritan Trust Co.* 211 Mass. 409, and that the defendant was under no liability to account to the plaintiff.

The evidence was not reported. The plaintiff, by objections and exceptions to the master's report, contended that the defendant should be required to account to him for the amount of the checks on Baker's administrator's account deposited to his individual account on the days following the overdrafts, for the amount of the checks on the administrator's account deposited to the personal account for the purpose of making it possible to certify checks drawn on the personal account, and for the amount of the check on the administrator's account deposited to the personal account for the purpose of enabling Baker to give a check to the defendant on the personal account for the amount of the Kentucky draft paid for him by the defendant.

The case was reserved by *Pierce*, J., for determination by the full court.

*E. K. Arnold*, for the plaintiff.

*N. B. Vanderhoof*, for the defendant.

BRALEY, J. The defaulting administrator opened two accounts with the defendant bank, one in his own name and one in his name as administrator of the estate of Albert H. Bird. It is found by the master that his individual account at various times was overdrawn for varying amounts, and that the overdrafts may have been respectively repaid the next succeeding bank days by

checks drawn on the administrator's account. But as another deposit to the credit of his individual account also had been made on those days sufficient to pay the overdrafts, the master decided that the plaintiff failed to show that the overdrafts were repaid by funds of the estate. The burden of proof rested on the plaintiff to establish the fact that the administrator had appropriated trust funds in payment of his own personal debts, and the evidence not having been reported, the master's conclusion on the facts found by him that no misappropriation had been proved cannot be revised. *Ginn* v. *Almy*, 212 Mass. 486.

If these transactions are thus disposed of, there remains the check for $4,000 drawn on the administrator's account, but deposited by the administrator to his own individual credit. By the form of the accounts appearing on its books the defendant was properly held to be chargeable with notice that all moneys deposited in the name of the administrator belonged to the estate. *Allen* v. *Puritan Trust Co.* 211 Mass. 409. But under the finding that the defendant had no actual knowledge that the administrator was wrongfully appropriating the funds of the estate for his own benefit the suit cannot be maintained. *Allen* v. *Puritan Trust Co.* 211 Mass. 409.

The result is, that the plaintiff's exceptions to the report must be overruled and the bill dismissed with costs.

*Decree accordingly.*