[No. 14696.  Department One.  July 31, 1918.]

ISLAND BELT STEAMSHIP COMPANY, *Appellant,* v.
J. & M. CAFE, *Respondent.*[1]

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE—SUFFI-
CIENCY.  An assistant purser on a boat, authorized to pay operating
expenses from collections, had apparent authority to cash checks,
having previously had such authority as purser, and the evidence
warranting a finding that no sufficient notice of change of authority
had been given.

Appeal from a judgment of the superior court for
King county, Tallman, J., entered September 29, 1917,
upon findings in favor of the defendant, in an action
on contract, tried to the court.  Affirmed.

*Martin J. Lund,* for appellant.

*T. D. Rockwell,* for respondent.

PARKER, J.—The plaintiff steamship company seeks
recovery from the defendant, J. & M. Cafe, of the
amount of three certain checks which were issued and
made payable to the order of the plaintiff and delivered
to one Doan, as its agent, in payment of freight
charges.  The checks were indorsed by Doan, as agent
for plaintiff, and delivered to the defendant, he receiv-
ing from it in cash the total amount of the checks,
which were thereafter, in due course, collected by the
defendant from the banks upon which they were drawn.
The plaintiff seeks recovery from the defendant upon
the theory that Doan was without authority, actual or
implied, to indorse the checks and receive cash there-
for.  Trial in the superior court for King county, sit-
ting without a jury, resulted in findings and judgment
denying to the plaintiff the relief prayed for, from
which it has appealed to this court.

[1]Reported in 174 Pac. 19.

During the period in question, appellant was the owner of the steamboat "Fairhaven," and we think the evidence warrants the assumption that its business consisted wholly in the operation of that boat in the carrying of freight and passengers between Anacortes, its home port, and Seattle and way points. Respondent, during the same period, owned and operated a cafe in Seattle. In the spring of 1916, Doan became the employee of appellant as purser upon its boat, which employment continued until sometime in October, 1916. Doan was not only appellant's purser, but to all outward appearance he was the general business representative of appellant, especially at the Seattle end of the line. It was his duty to solicit business for the boat, collect freight charges and passenger fares, and pay the expense of operating the boat from collections so made, though it may be conceded that he had no authority to sign checks for that purpose against funds which were upon deposit in appellant's bank account. Appellant had no office in Seattle other than upon the boat. Doan and other employees, in a general way, seem to have made respondent's cafe their headquarters when in Seattle. Respondent's manager knew of Doan's relation to the appellant. Respondent from time to time cashed checks for other employees when they were in Seattle, the checks so cashed being those drawn against appellant's bank account but not signed by Doan. Checks were cashed for Doan by respondent which were checks payable to appellant which he had received from shippers in payment of freight charges. Some dozen or more of such checks had been cashed for Doan by respondent prior to October, 1916, he indorsing and delivering them to respondent as agent for appellant. In October, 1916, Doan was succeeded as purser by another employee. Thereafter Doan was

employed by appellant to assist the new purser and also to act as its representative at the Seattle end of the line. He then had business cards printed purporting to show that he was appellant's agent, which he used in soliciting business for the boat. This was done, we think, with appellant's approval. He also made several trips upon the boat assisting the new purser in his work. Respondent's manager knew of the nature of Doan's employment and authority prior to October, 1916, and believed that such authority continued until after it cashed the three checks here in question. Soon after the cashing of these checks, respondent's manager was told by appellant's general manager not to cash any more checks for Doan. The evidence is not specific as to what other conversation then occurred, but the inference is warranted that appellant's manager knew that respondent had been cashing checks for Doan prior thereto in a similar way, and did not then claim that Doan had no authority to indorse the checks so cashed. The checks here involved were upon their face payable to appellant and were for the sums of $165, $148, and $3, respectively, all of which were indorsed in blank by Doan as agent for appellant, delivered to respondent, it paying to Doan the full face value thereof as a matter of accommodation. This we think is a fair summary of the view of the facts taken by the trial court, and which we think is warranted by the evidence.

Counsel for appellant invokes the general rule that an agent who is merely authorized to collect money for his principal in payment of debts due his principal is not thereby impliedly authorized to indorse checks which he receives in payment of such debts, and collect money thereon, citing: *Deering & Co. v. Kelso,* 74 Minn. 41, 76 N. W. 792, 73 Am. St. 324; *Graham v.*

*United States Savings' Institution,* 46 Mo. 186; *Sinclair & Co. v. Goodell,* 93 Ill. App. 592; *Goodell v. Sinclair & Co.,* 112 Ill. App. 594.

We think, however, this rule is not applicable to the facts in this case, since it plainly appears that Doan was something more than a mere soliciting agent. He was, we think, the financial agent of appellant as well, in that he was authorized to pay from the collections made by him the expense of operating the boat; in other words, he was a disbursing as well as a collecting agent. This, it seems to us, warranted the trial court in concluding that he had authority to reduce his collections, made in the form of checks, to money, by indorsing checks so received, as agent for appellant. Observations made by this court in *Graton & Knight Mfg. Co. v. Redelsheimer,* 28 Wash. 370, 68 Pac. 879, lend support to this conclusion. We have not lost sight of the fact that Doan's employment as purser changed in October, 1916, and that the checks here involved were not cashed by him until February, 1917. But we think the trial judge was warranted in concluding that his employment continued under such circumstances as to indicate to respondent that he was still the agent of appellant, possessing the same authority as while he was acting as purser prior to October, and that respondent was warranted in believing, and did in good faith believe, that Doan's relation to appellant had not changed in so far as his authority was concerned. The question here to be determined, in its last analysis, is one of fact. Had the cause been tried in the superior court by a jury, resulting in a verdict in favor of respondent, we are quite convinced we would not be justified in disturbing such verdict. While, of course, we are not bound by the conclusions of the trial court upon questions of fact as we would be by the verdict

of a jury upon such questions, this record, as a whole, convinces us that we would not be warranted in disturbing the conclusion reached by the trial court.

The judgment is affirmed.

MAIN, C. J., MITCHELL, TOLMAN, and FULLERTON, JJ., concur.