## WILLIAM C. RODGERS v. BANKERS NATIONAL BANK. MARSHALL BARTLETT v. SAME DEFENDANT.[1]

January 17, 1930.

Nos. 27,457, 27,458.

[1]Reported in 229 N. W. 90.

198

*Brill & Maslon,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre, Claude Krause and Glenn S. Stiles,* for respondents.

*Fowler, Carlson, Furber & Johnson* and *Ralph H. Comaford,* amici curiae, filed a brief in behalf of the Minnesota Bankers Association.

WILSON, C. J.

The bank has appealed from an order in each of these two cases denying its motion for a new trial.

Raymond L. Henderson was the trustee in bankruptcy of the estate of the Butterfly Confectionery Company, a corporation, from June 17, 1924, until October 21, 1925, when he resigned and Marshall Bartlett is his successor. Raymond L. Henderson also was the trustee in bankruptcy of the estate of the Radio & Sporting Goods Supply Company, a corporation, from June 29, 1925, until October 21, 1925, when he resigned and was succeeded by William C. Rodgers.

From August, 1919, to September, 1925, inclusive, Henderson carried a personal checking account with defendant bank. He occasionally borrowed moderately from the bank. While so acting as such trustee in these two estates Henderson came into possession of five checks which he deposited in his checking account with the defendant and thereafter checked out the proceeds for unauthorized purposes under circumstances amounting to embezzlement. These checks as delivered to the bank by Henderson were in the form, excluding bank indorsements, and indorsed as follows:

Exhibit E.

"Mercantile State Bank

"Minneapolis, Minn. June 13, 1924.   No. 63468

"Pay to the order of Croft & Boerner . . . . . . . $2,000.00

"Two Thousand and no/100 . . . . . . . . . Dollars

"Cashier's check

. . . . . . . . . . . . . . . . . . . . . .

"Cashier

(Indorsed on back)

"Pay to L. A. Hubacheck,

"Croft & Boerner

"Pay to Raymond L. Henderson, Trustee

"Butterfly Confectionery Company, a corporation, bankrupt.

·"L. A. Hubacheck

"Raymond L. Henderson, Trustee Butterfly Confectionery Company, a corporation, bankrupt.

"Raymond L. Henderson."

Exhibit H.

"Minneapolis, Minn. 6/29/25   No. 2005

"Pay to the order of R. L. Henderson . . . . . . $1,624.27

"Sixteen Hundred Twenty Four and 27/100 . . . . Dollars

"Union State Bank      Radio and Sporting Goods Supply Co.

"Minneapolis, Minn.           A. O. Gieri   (Receiver)

"Bal a/c to Trustee

(Indorsed on back)

"R. L. Henderson"

Exhibit J.

"Minneapolis, Minn. July 2, 1925   No. 6232

"Pay to the order of R. L. Henderson Trustee  . . . $1,000.00

"One Thousand . . . . . . . . . . . . -. . Dollars

"To The Northwestern National Bank    D. E. Baker Special Agent

"Minneapolis, Minn.                By D. E. Baker

(Indorsed on back)

"R. L. Henderson Trustee

"Raymond L. Henderson."

Exhibit L.

"Minneapolis, Minn. July 3, 1925   No. 6240

"Pay to the order of R. L. Henderson Trustee   .   .   .   $5,500.00
"Fifty-five Hundred and no/100   .   .   .   .   .   .   .   .   Dollars

"To the Northwestern National Bank       D. E. Baker Special Agent
   "Minneapolis, Minn.                         By D. E. Baker
(Indorsed on back)
"Within Voucher is received as full settlement of purchase price covering inventory on file with Alexander McCune, Referee in Bankruptcy, of stock and fixtures of Radio and Sporting Goods Supply Company, Bankrupt.
   "R. L. Henderson Trustee
   "Raymond L. Henderson"

Exhibit N.

"Minneapolis, Minn. 8/31/1925   No. 94213

"Pay to the order of R. L. Henderson Trustee   .   .   .   .   $170.51
"One Hundred seventy and 51/100   .   .   .   .   .   .   .   Dollars

"To the Hennepin County Savings Bank,   Henderson Stiles & Gates
   "Minneapolis, Minn.              Elsie Wenvermiller, Auditor
(Indorsed on back)                      W. B. Henderson
"R. L. Henderson Trustee
"Raymond L. Henderson"

The cashier's check, exhibit E, belonged to the Butterfly estate, and the other four checks belonged to the Radio estate. These two actions are prosecuted by the present trustees of the respective bankrupt estates to charge the bank with liability for the proceeds of these checks.

■ There is much authority for and against liability of a bank for the proceeds of deposits of a fiduciary of his trust funds to his personal account and the dissipation thereof. The authorities which impose liability do so upon the theory that the bank, being charged with constructive notice from the form of the checks deposited plus the deposit thereof to the personal account, assists by affording to

the fiduciary the machinery by which he misappropriates the proceeds and without securing adequate assurance of the propriety of the conduct of the fiduciary.

It seems illogical and inexpedient to say that there is a distinction between such a deposit when made by a trustee and one made by an agent. One of the recent cases supporting plaintiffs' theory, in which many cases are cited, is McIntosh v. Detroit Sav. Bank, 247 Mich. 10, 225 N. W. 628. See also Oklahoma State Bank v. Galion I. W. & Mfg. Co. (C. C. A.) 4 F. (2d) 337. The numerical weight of authority favors nonliability. 40 Harv. L. Rev. 1077, 1080, and cases there cited; 34 Harv. L. Rev. 469; Empire Tr. Co. v. Cahan, 274 U. S. 473, 47 S. Ct. 661, 71 L. ed. 1158, 57 A. L. R. 921. To this proposition appellant cites:

6 Cal. L. Rev. 171, 173; 10 Minn. L. Rev. 611; 32 Yale L. J. 377; 35 Yale L. J. 854; Gray v. Johnston (1868) L. R. 3 H. L. 1; Shields v. Bank of Ireland (1901) 1 Ir. R. 222; Coleman v. Bucks and Oxon Union Bank (1897) 2 Ch. 243; Corporation Agencies, Ltd. v. Home Bank of Canada (1927) A. C. 318; Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; Taylor v. Astor Nat. Bank, 105 Misc. 386, 174 N. Y. S. 279; Wickenheiser v. Colonial Bank, 168 App. Div. 329, 153 N. Y. S. 1035, affirmed, Wickenheiser v. Herring, 224 N. Y. 651, 121 N. E. 898; Corn Exchange Bank v. Manhattan Sav. Inst. 105 Misc. 615, 173 N. Y. S. 799; Mills v. Nassau Bank, 52 Misc. 243, 102 N. Y. S. 1119; Whiting v. Hudson Tr. Co. 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470; Fidelity & D. Co. v. Queens County Tr. Co. 226 N. Y. 225, 123 N. E. 370; Batchelder v. Central Nat. Bank, 188 Mass. 25, 73 N. E. 1024; City of Newburyport v. Spear, 204 Mass. 146, 90 N. E. 522, 134 A. S. R. 652; City of Newburyport v. First Nat. Bank, 216 Mass. 304, 103 N. E. 782; Allen v. Puritan Tr. Co. 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518; Allen v. Fourth Nat. Bank, 224 Mass. 239, 112 N. E. 650; Kendall v. Fidelity Tr. Co. 230 Mass. 238, 119 N. E. 861; Eastern Mut. Ins. Co. v. Atlantic Nat. Bank, 260 Mass. 485, 157 N. E. 520; U. S. F. & G. Co. v. First Nat. Bank, 18 Cal. App. 437, 123 P. 352; Goodwin v. American Nat. Bank, 48 Conn. 550; Munnerlyn v. Augusta Sav. Bank, 88 Ga. 333, 14 S. E. 554, 30 A. S. R. 159;

McDaniel v. Farmers & M. Bank, 37 Ga. App. 782, 142 S. E. 178; Duckett v. National M. Bank, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 A. S. R. 513; Brookhouse v. Union Pub. Co. 73 N. H. 368, 62 A. 219, 2 L.R.A.(N.S.) 993, 111 A. S. R. 623, 6 Ann. Cas. 675; Interstate Nat. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 A. S. R. 885; Gate City B. & L. Assn. v. National Bank, 126 Mo. 82, 28 S. W. 633, 27 L. R. A. 401, 47 A. S. R. 633; Safe D. & T. Co. v. Diamond Nat. Bank, 194 Pa. 334, 44 A. 1064; Hood v. Kensington Nat. Bank, 230 Pa. 508, 79 A. 714; U. S. F. & G. Co. v. Home Bank, 77 W. Va. 665, 88 S. E. 109.

We all agree that one who knowingly assists a fiduciary in a breach of duty assumes a liability. It is true that the bank aided Henderson in collecting the proceeds of the checks. The vital question is whether the form of the checks should be construed, in connection with the deposit thereof to the fiduciary's personal account, as imparting to the bank notice of his wrongdoing essential to liability on the part of the bank. This is an open question with us. The authorities disagree. The question must be determined in relation to the general security and the public welfare. Banks are in effect fiscal agents of the government. They are essential to the business interests of our state. They operate under government supervision. The public has a keen interest in their successful operation and in their facilities for public service. They aim to afford the public a place for the safe-keeping of one's money. While regulation must be and is strict and exacting, unreasonable and unjust rules inconsistent with the efficient and safe conduct of the bank are not to be imposed. Having this in mind, we believe that reason and principle lead to the adoption of the rule of nonliability.

The trustee may deposit fiduciary funds in his personal account without subjecting himself to liability, Cornet v. Cornet, 269 Mo. 298, 190 S. W. 333; Sagone v. Mackey, 225 N. Y. 594, 122 N. E. 621; which comes only when the funds are lost. In re Arguello, 97 Cal. 196, 31 P. 937; and see 45 L.R.A.(N.S.) 1, 12, note. The bank ought not to be held responsible for the money's being checked out for illegal purposes unless it knows or in some special transaction

has good reason to believe that a misappropriation of the money is being made. State ex rel. Davis v. Farmers & M. Bank, 112 Neb. 840, 201 N. W. 897. Under some circumstances when accompanied by the intention such depositing may be a conversion. But such depositing of the funds alone or for right purposes may be innocent and consistent with honesty and just dealing. Presumably the depositor so acts. In such a situation the bank should not be required to attribute an unlawful intention to him. U. S. F. & G. Co. v. First Nat. Bank, 18 Cal. App. 437, 440, 123 P. 352, 353; Goodwin v. American Nat. Bank, 48 Conn. 550, 566; Brookhouse v. Union Pub. Co. 73 N. H. 368, 371, 62 A. 219, 221, 2 L.R.A.(N.S.) 993, 111 A. S. R. 623, 6 Ann. Cas. 675; U. S. F. & G. Co. v. Home Bank, 77 W. Va. 665, 668, 88 S. E. 109, 110; Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059. We cannot agree to the contention that when one deposits funds in his personal bank account that it must be regarded as equivalent to a declaration of intent to devote them to his personal ends.

All authorities seem to agree that if the trustee cashed the check over the counter and misappropriated the money, liability of the bank would not follow. Rundlett v. Midland Nat. B. & T. Co. 168 Minn. 434, 210 N. W. 630; Commercial Sav. B. & T. Co. v. National Surety Co. (C. C. A.) 294 F. 261; State ex rel. Elberta P. & L. Co. v. Chicago B. & S. Co. 279 Mo. 535, 215 S. W. 20; State ex rel. Davis v. Farmers & M. Bank, 112 Neb. 840, 201 N. W. 897; Island Belt S. S. Co. v. J. & M. Cafe, 103 Wash. 263, 174 P. 19. If they may safely pay him the cash there is little reason to justify a refusal to give him a deposit credit. He may concededly cash the check at the drawee bank and deposit the cash in his own bank without imposing liability upon it for his breach of duty. To deposit the check for collection in his own bank is a shorter and more modern businesslike method of accomplishing the same end (the propriety of which we do not consider) and we see no good reason, all things considered, for saying that that imposes a greater liability on the bank. Some authorities sustain our view in this particular. U. S. F. & G. Co. v. First Nat. Bank, 18 Cal. App. 437, 123 P. 352; Gate

City B. & L. Assn. v. National Bank, 126 Mo. 82, 87, 28 S. W. 633, 634, 27 L. R. A. 401, 47 A. S. R. 633; Safe D. & T. Co. v. Diamond Nat. Bank, 194 Pa. 334, 44 A. 1064; U. S. F. & G. Co. v. Home Bank, 77 W. Va. 665, 668, 88 S. E. 109. Up to this point no conversion has been facilitated. Henderson was indorsee in the checks with power to collect them. His power was neither increased nor diminished by the form of the deposit. He held the legal title of the check whether subject to a trust or free from one. The trust and confidence imposed in the fiduciary is that extended to him by the one creating the trust or agency. It is not the bank.

Another reason that assists us in reaching our conclusion is that this policy is embraced by the national conference of commissioners of uniform state laws in § 9 of the uniform fiduciaries act, which has been adopted in several states including Colorado, Idaho, Louisiana, Nevada, New Mexico, North Carolina, Pennsylvania, Utah and Wisconsin. 9 Uniform Laws Annotated (Supp. 1928) 107.

We also find support for nonliability from the rule that a purchaser in good faith of trust property from a trustee having authority to sell is relieved of responsibility for unknown breaches of trust on the part of the trustee. Santa Marina Co. v. Canadian Bank of Commerce (C. C. A.) 254 F. 391, 394; Batchelder v. Central Nat. Bank, 188 Mass. 25, 73 N. E. 1024; Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 55 N. W. 825, 40 A. S. R. 299.

Granting that the rule of liability tends to prevent losses, the good resulting therefrom is not commensurate with the hardship involved incident to (1) the necessary examination of items offered for deposit, (2) the necessary inquiry, sometimes offensive, often productive of discord, and many times necessarily unproductive of the desired results, and (3) the imposition of a considerable expense upon the bank to watch for the wrongdoing of persons outside its own organization, which expense theoretically is passed on to the public composing its patrons. It may be that such a rule would necessitate employes of greater learning and ability—certainly demanding those capable of an exacting duty commensurate with the responsibility involved. Obviously the receiving teller, under the

rule of liability, must be one able inoffensively to question the depositing customer as to his authority to do what he is offering to do. But may the bank safely accept the fiduciary's assurances of his authority? We think not. If not, why ask for them? But those who differ with us say that he is presumed to tell the truth. Jeffray v. Towar, 63 N. J. Eq. 530, 53 A. 182. Others say that the inquiry should be made of someone who has no motive to misrepresent the facts. 39 Cyc. 564; Jonathan Mills Mfg. Co. v. Whitehurst (C. C. A.) 72 F. 496. But see Mercantile Nat. Bank v. Parsons, 54 Minn. 56, 55 N. W. 825, 40 A. S. R. 299. Professor Austin Scott, 34 Harv. L. Rev. 468, says:

"Such an inquiry would naturally be regarded by a depositor as officious and insulting, and in most cases if the depositor were in fact acting wrongfully, his answers would be false and of no avail in preventing a breach of trust."

It seems that where the rule is adopted the bank cannot accept the fiduciary's assurance of faithful conduct. U. S. F. & G. Co. v. People's Bank, 127 Tenn. 720, 157 S. W. 414. In any event the speedy inquiry can only be crudely and superficially made by one with doubtful ability therefor. When the fiduciary is a trustee of an estate the bank cannot make an effectual inquiry of the principal, who even in case of an agency is frequently far away. But where the rule favors liability it has been enforced where the principal's name has not appeared upon the paper offered for deposit. Taylor v. Harris' Admr. 164 Ky. 654, 176 S. W. 168; Mitchell v. First Nat. Bank, 203 Ky. 770, 263 S. W. 15; Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934; U. S. F. & G. Co. v. People's Bank, 127 Tenn. 720, 157 S. W. 414. Under such a rule the only safe course would be for the bank simply to refuse all such items. This would be a very arbitrary rule by an institution which is supposed to render a public service in step with commercial and financial development. It would be better to say that any service which the bank may reasonably and safely give it must give. It is expected by all.

It may also be noted that situations may arise where the fiduciary is the sole officer authorized to indorse, and payment must be made upon his signature even to himself. Ordinarily the customer should be the one to decide whether he wishes to disclose his business secrets to the banker, who might find temptation because of similar knowledge extracted by pressure from other customers. Let the banker run the bank. That is quite sufficient. To that he is held to strict account. It is impossible for him adequately to guard against liability under the rule. The rule of liability is not practicable. The banker cannot be expected to exercise the same vigilance in transactions wherein he has no pecuniary interest as where he has. City of Newburyport v. First Nat. Bank, 216 Mass. 304, 103 N. E. 782; Allen v. Puritan Tr. Co. 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518.

There was a time when the business of the fiduciary was small. Now it is tremendous. Agents, partners, corporations, trustees, representatives of estates, public officials, all mark the immense importance and volume of business with opportunities for dishonesty, to which some will yield. But those who have a direct interest should carry the responsibility, from which they may protect themselves from loss by insurance or otherwise. Those for whom the fiduciary acts should find their protection in his financial worth, integrity, or his bond. The insurer may protect itself by joint control. In a case of this character we must always keep in mind that the bank is in no way enriched, that it did not select the fiduciary or cause him to be selected, and is giving a character of service that ought not to be charged with the peril of such liability. In the very nature of the transaction the liability does not belong to the bank. It is out of proportion to the conduct of the bank to which it is sought to attach liability.

A bank is liable for the loss of trust funds deposited with it in the name of the trustee when, having actual knowledge of the character thereof, it acts in bad faith by conniving with the fiduciary. It is also liable if it receives for itself such funds from the trustee under circumstances charging it with constructive knowledge of their trust character. It is also liable if it receives and retains

such funds without notice or knowledge of their true character, unless it has so changed its position that it has acquired equities equal or superior to the rights of the owner. Duties of fiduciaries should be strict and exacting, and third persons who knowingly participate in a breach of their obligations must answer therefor. It is going too far however to say that the third person, here the bank, must supervise the conduct of the fiduciary chosen for his integrity by someone else, and to impose liability for failure to do so. We answer the vital question in the negative.

Exhibits J and N show on their face that Henderson was trustee, but the cestui que trust was not disclosed. Exhibits E and L show in the chain of indorsements on the back thereof that the money was trust funds in bankruptcy of the disclosed estates. Exhibit H is not so characterized upon its face. It does bear this memorandum: "Bal a/c to Trustee," which has no definite meaning and is ineffectual to identify the character of the funds for the purposes here involved. First Nat. Bank v. School Dist. No. 15, 173 Minn. 383, 217 N. W. 366, 56 A. L. R. 1369; State Nat. Bank v. Dodge, 124 U. S. 333, 8 S. Ct. 521, 31 L. ed. 458; State Nat. Bank v. Reilly, 124 Ill. 464, 14 N. E. 657; Duckett v. National M. Bank, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 A. S. R. 513; Eyrich v. Capital State Bank, 67 Miss. 60, 6 So. 615.

In the instant case the bank had constructive notice that the proceeds of four of the checks were trust funds and that the proceeds of two of these involved judicial or official trusts.

A similar conclusion upon much the same kind of a record, but in reference to a designated depository which gives more support for the result, has been criticized by Professor Scott as carrying the doctrine of constructive notice to an unreasonable extent. 34 Harv. L. Rev. 480. Charged with such knowledge it could not have accepted Henderson's check thereon for the payment of his obligation to the bank. To have done so would have been to establish by its own acceptance the proof of the breach of trust and its own participation in it for its own benefit. Gray v. Johnston (1868) L. R. 3 H. L. 1; Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; Ward v. City Tr. Co. 192 N. Y. 61, 84 N. E.

585; Hale v. Windsor Sav. Bank, 90 Vt. 487, 98 A. 993; Hall v. Windsor Sav. Bank, 97 Vt. 125, 121 A. 582, 124 A. 593; Brovan v. Kyle, 166 Wis. 347, 165 N. W. 382; Havana C. R. Co. v. Central Tr. Co. (C. C. A.) 204 F. 546, L. R. A. 1915B, 715. The bank did receive checks from Henderson on his personal account in payment of his indebtedness to the bank, but at times when it in no way affected the proceeds of any of the five checks. Such proper payments add nothing to the existing constructive notice as to the existing trust fund. He had personal funds in the same account, and his payment of honest debts therefrom to the extent thereof as he had a right to do was a circumstance tending to ward off suspicion of misconduct. Indeed the proof does not show that the bank ever received any Henderson fiduciary funds from any source. An examination of the record convinces us that the bank never received any of the trust funds here involved for its own benefit nor was it in any way guilty of bad faith.

■ Plaintiffs also rely upon another circumstance to establish the bank's knowledge of misappropriation. This is the alleged knowledge radiating from the withdrawal checks and the size of the account. Henderson's account showed a total deposit by years: 1919, $2,150.10; 1920, $9,988.82; 1921, $6,940.23; 1922, $33,052.54; 1923, $68,746.47; 1924, $52,523.21; 1925, $72,479.04. His average monthly balance card showed this: 1919, $135; 1920, $142; 1921, $109.83; 1922, $723; 1923, $1,787.92; 1924, $2,312.92; 1925, $830.30.

Henderson made a number of checks to brokers who dealt in bonds and stocks. In July, 1923, he so issued ten checks averaging $1,350 each. In August, 1923, he so issued five checks averaging $2,000 each. In 1924 he so issued 13 checks averaging $1,248.85 each. There were withdrawals near the time when substantial sums were deposited, whether they were fiduciary funds or otherwise. During these years he deposited 14 other fiduciary checks, making 19 in all. The number is not important. Corporation Agencies, Ltd. v. Home Bank of Canada (1927) A. C. 318; Empire Tr. Co. v. Cahan, 274 U. S. 473, 47 S. Ct. 661, 71 L. ed. 1158, 57 A. L. R. 921; Town of Eastchester v. Mt. Vernon Tr. Co. 173 App. Div. 482, 159 N. Y. S.

289; Parker-Gordon C. Co. v. Liberty Nat. Bank, 134 Okl. 286, 273 P. 269; State ex rel. Davis v. Farmers & M. Bank, 112 Neb. 840, 201 N. W. 897; Allen v. Fourth Nat. Bank, 224 Mass. 239, 112 N. E. 650. It now appears that he had some marginal transaction, but that was not known to the bank until the crash came. Henderson was an attorney, and it is not uncommon for an attorney's checking account to show more money than he himself owns. The account was not unusual from a banking standpoint. Such circumstances however are competent for consideration in relation to actual knowledge. They have little application to the vital question hereinbefore answered in the negative, and they are insufficient to establish liability here upon any theory.

As above indicated, these funds passed into the checking account in a way charging the bank with constructive notice that they were trust funds. But regardless of that it remained the duty of the bank to honor checks drawn by Henderson. The relationship of banker and depositor is that of debtor and creditor. The bank's contract is to safely keep the money and to pay it out on check of the depositor. The bank has no supervisory power over the deposit or the disposition thereof. U. S. F. & G. Co. v. Home Bank, 77 W. Va. 665, 669, 88 S. E. 109; Commercial Sav. B. & T. Co. v. National Surety Co. (C. C. A.) 294 F. 261; State ex rel. Davis v. Farmers & M. Bank, 112 Neb. 840, 201 N. W. 897. We cannot say that a bank ought, much less that it has a duty, to inquire minutely into the affairs of the depositor's checking account. He does not welcome that. The bank is bound to honor the customer's checks unless it has at the time actual or constructive knowledge that the customer is then and there and by means thereof intending wrongfully to divert the money. Texas H. & I. Mut. F. Ins. Co. v. Dallas T. & S. Bank (Tex. Civ. App.) 295 S. W. 665; Gray v. Johnston (1868) L. R. 3 H. L. 1; Bogle v. Goldsworthy, 202 Iowa, 764, 211 N. W. 257; Lowndes v. City Nat. Bank, 82 Conn. 8, 72 A. 150, 22 L.R.A.(N.S.) 408; Allen v. Puritan Tr. Co. 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518; Allen v. Fourth Nat. Bank, 224 Mass. 239, 112 N. E. 650; Bischoff v. Yorkville Bank, 218 N. Y. 106,

112 N. E. 759, L. R. A. 1916F, 1059; Whiting v. Hudson Tr. Co. 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470; Pennsylvania T. & T. Co. v. Meyer, 201 Pa. 299, 50 A. 998; Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693; State ex rel. Elberta P. & L. Co. v. Chicago B. & S. Co. 279 Mo. 535, 215 S. W. 20; Cocke's Admr. v. Loyall, 150 Va. 336, 143 S. E. 881; Havana C. R. Co. v. Central Tr. Co. (C. C. A.) 204 F. 546, L. R. A. 1915B, 715; Parker-Gordon C. Co. v. Liberty Nat. Bank, 134 Okl. 286, 273 P. 269; Rice v. Peoples Sav. Bank, 140 Wash. 20, 247 P. 1009; Town of Eastchester v. Mt. Vernon Tr. Co. 173 App. Div. 482, 159 N. Y. S. 289. The bank's solicitude should be to pay the debt to or upon the proper order of the person to whom it is owing, but not to suspect its customer's integrity or to guard against his doing wrong. Lowndes v. City Nat. Bank, 82 Conn. 8, 72 A. 150, 22 L.R.A.(N.S.) 408; Duckett v. National M. Bank, 86 Md. 400, 405, 38 A. 983, 39 L. R. A. 84, 63 A. S. R. 513. From the record as it existed at the time of the transactions, we are unable to find any evidence, circumstantial or otherwise, to justify the conclusion or reasonable inference that the bank acted in bad faith or was enriched by permitting Henderson to check out the funds in his account as he saw fit.

■ It is claimed that an acceptance of a deposit from a judicial or other public fiduciary in direct violation of statutory protective provisions renders the bank liable as a joint participant if the trustee dissipates the fund. Many of the cases cited by respondents in support of this claim involved cases where the cestui que trust follows the funds into the hands of the bank for the purpose of impressing the funds with the trust. In many of such cases, where a bank receives a deposit from a public official, funds known to be held by the latter in his official capacity, it becomes thereby a trustee for the beneficial owner with respect to such funds; and it is no doubt the rule that when, except as authorized by statute, an official custodian of public funds makes a general deposit thereof in his own name, a trust results in favor of the beneficial owner. But this rule is not controlling in a case of this character. This is not a case to impress a trust upon funds in the possession of

the bank. The funds are gone. This action seeks to impose a personal liability upon the bank, because of an alleged violation of its duty.

In this branch of the case the claim is that the bank is charged with imputed knowledge of the terms of the bankruptcy act and the general orders thereunder and that it became liable because it received the bankrupt funds as a deposit when it was not a designated depository. Section 61 of the bankrupt act relates only to the designation of the depository. Section 47a(3) commands the trustee to use such designated depository. It provides that a failure to do so will make the trustee and his surety liable. General order No. XXIX relates to the method of withdrawals from a designated depository and the keeping of the record thereof. It is a command to the designated depository and to the trustee. It specifies their duties. It defines the duty of both in reference to the keeping of the money in the designated depositories. The purpose of these sections of the act and the order is to safely keep the money. They are directed to the trustee and to the designated depository. They protect the creditors against weak and insolvent banks. Defendant was not a designated depository. We have gone quite far enough to charge defendant with knowledge of the character of trust funds in this branch of the case when notice thereof rested wholly in the chain of indorsements. The bank had no actual knowledge thereof.

The provisions of the bankruptcy act and the general order mentioned were not meant to regulate the conduct of a bank which is not a designated depository. They were not intended to change the law applicable generally to a bank receiving fiduciary funds. Nor were they intended to define the liabilities of banks generally having business relations with trustees in bankruptcy. There is no reason or principle permitting us to extend the protective provisions beyond their special purposes. They alone furnish adequate protection to the estate. Nothing else is necessary. We should not therefore impose added burdens upon those who are not reasonably within their operation. There is no reason to construe these

efficient protective measures as imposing additional liabilities upon a bank which has never become a designated depository and in which the trustee has not opened his checking account in his name as such trustee. These provisions are apparently without universal application, as they may be waived by the interested parties for whose benefit they were enacted. Huttig Mfg. Co. v. Edwards (C. C. A.) 160 F. 619; In re Barnett (D. C.) 214 F. 263; In re Dayton C. & I. Co. (D. C.) 239 F. 737. Actual knowledge of these provisions is not asserted. The claim rests on constructive knowledge. But granting that a designated depository is charged with such constructive knowledge as indicated in Fidelity & D. Co. v. Queens County Tr. Co. 226 N. Y. 225, 123 N. E. 370, the defendant is beyond the operation thereof since they were never intended to impose additional burdens upon a bank not a designated depository; and the law hereinbefore stated applicable generally to a bank receiving fiduciary. funds controls.

In Fidelity & D. Co. v. Queens County Tr. Co. 226 N. Y. 225, 123 N. E. 370, the trustee in bankruptcy deposited the funds in an authorized depository. The deposit slips stated that the deposits were made as trustee and the deposits were credited to the account of "Robert J. Peebles, Trustee." There were not many items. One was a check drawn by one O'Grady payable to himself and indorsed:

"Pay to the order of Robert J. Peebles, Trustee in Bankruptcy for William Trist Bailey, Bankrupt. John J. O'Grady. Robert J. Peebles,· Trustee in Bankruptcy for William Trist Bailey, Bankrupt, for deposit to the credit of Robert J. Peebles, Trustee."

Withdrawals were made by 50 checks, each signed "Robert J. Peebles, Trustee." Thirty-two checks were countersigned. Eight were paid without the countersignature. General order No. XXIX in bankruptcy required a countersignature. Peebles misappropriated the trust funds by the drawing of the eight checks in the ordinary form, without the countersignature, and depositing them to his individual account in the same trust company, which did not receive any of the money in payment of his indebtedness to it. The

court held [226 N. Y. 231] consistent with our views hereinbefore stated, that the trust company was charged with knowledge that the funds in the trust account were trust funds but that it "did not, however, by paying moneys of those funds to Peebles or crediting them to his individual account, through the check of 'Robert J. Peebles, Trustee,' participate in a misappropriation of them by the trustee. A liability of the defendant did not arise from those facts. Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059."

In the Queens County Tr. Co. case, 226 N. Y. 225, 123 N. E. 370, the court held that the trust company was charged with knowledge that the trust funds belonged to the bankrupt estate; that it was also chargeable with knowledge of the existence of the general orders and with the provisions of the bankrupt act. Because thereof it held the trust company liable because it honored incomplete and improperly drawn checks in that they did not bear the required countersignature.

Rundlett v. Midland Nat. B. & T. Co. 168 Minn. 434, 210 N. W. 630, seems to be authority in support of defendant herein, though in that case the distinctive characteristics of a judicial fiduciary relative to statutory duty were not directly involved or discussed. It does however hold that the bank does not incur liability by paying over the counter a cashier's check payable to a trustee in bankruptcy who had indorsed it as trustee and individually on the theory of a participation in the trustee's breach of trust misappropriating the proceeds of the check. Upon the reason and principle advanced in subdivision 1 of this opinion, a similar conclusion in this branch of the case would seem to follow.

In New York state there was a statute requiring representatives of estates to keep the trust funds separate and distinct from their own personal funds. A violation thereof was made a crime. Yet in Manufacturers Tr. Co. v. U. S. M. & T. Co. 122 Misc. 726, 204 N. Y. S. 105, 110, where this statute was violated by the trustee's depositing in the trust company the trust funds in his individual account, it was held that the trust company was not liable for a dissipation of the trust funds unless it had actual notice or partici-

pated in the conversion. It was said [122 Misc. 731] that such statutes do not affect the fiduciary's general liability, "nor do they impose any liability upon other persons in cases where no such liability previously existed. * * * Had the legislature intended to place additional responsibility upon depositories it would have so stated. This additional responsibility cannot be placed by implication. If banking institutions are to be charged with notice of conversion or intended conversion, rendering them liable for the criminal acts of their depositors, when checks are drawn or deposited by fiduciaries under the conditions disclosed in this case, it should be done by an act of the legislature, concerning which there is no ambiguity."

It seems to us that this case is analogous to the one now under consideration. We are reluctant to read into the bankrupt act or the general orders an intention, nowhere expressed therein, to change the general rules governing the liabilities of banks in dealing with fiduciaries. Laws must be construed if reasonably possible to facilitate business and promote the general welfare.

Commercial Sav. B. & T. Co. v. National Surety Co. (C. C. A.) 294 F. 261, is of little support to our conclusion because in that case it was held that the contents of the check were insufficient to charge the bank with notice of the character of the funds.

In Franklin Sav. Bank v. International Tr. Co. 215 Mass. 231, 102 N. E. 363, cited by respondents, a check payable to a town, which could be put in circulation only by a certain method of indorsement, was received for deposit without the required indorsement but upon an invalid indorsement. The bank was held liable for the dissipation of the proceeds. This case is not helpful. There was a violation of its contract with the depository.

We have not been able to find any case imposing liability on a bank, not a designated depository, because of its acceptance of a fiduciary deposit contrary to a statutory provision. It would seem that the weight of authority is to the contrary. Our conclusion is that under such circumstances the general rule hereinbefore stated controls.

Both orders are reversed.

HILTON, J. (dissenting).

Fully recognizing the great and indispensable service that banks are rendering to the public and the necessity of not unduly hampering them in the discharge thereof, I am constrained to dissent from the able and exhaustive opinion of the Chief Justice. I feel that under the facts disclosed by the evidence the bank should be held liable and the orders of the trial court affirmed. The bank had sufficient notice that Henderson was using trust funds for his own purposes; it had a duty in the premises and should be held responsible for the results arising from the failure to perform that duty. Its negligent conduct made possible the conversion of trust funds by Henderson; it constituted an aiding and abetting thereof. This is not a case where a single transaction is involved, which might have been overlooked through inadvertence. Instances were numerous, extending over a period of many months. The circumstances were manifestly such as to require inquiry on its part. The unpleasantness that might follow from the inquiry is not a legal excuse for not making it. The bank should not escape liability by disclaiming knowledge of what it could or should have known. In my opinion the findings of the trial court were amply supported by the evidence and should stand with the correct conclusions of law drawn therefrom.