**SWIFT COUNTY BANK, Respondent,**

v.

**UNITED FARMERS ELEVATORS, Defendant and Third Party Plaintiff, Appellant,**

v.

**Roger BERENS, Third Party Defendant, Respondent.**

No. C3–84–1586.

Court of Appeals of Minnesota.

April 16, 1985.

Review Denied June 24, 1985.

James R. Anderson, Marshall, for United Farmers Elevators.

Donald A. Wilcox, Holmquist & Wilcox, Benson, for Swift County Bank.

Heard, considered and decided by FORS-BERG, P.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

Respondent Swift County Bank sued appellant United Farmers Grain Elevators (United) for conversion of grain. United purchased the grain, in which the bank had a valid, perfected security interest, from a farmer who was joined as a third-party defendant. The trial court granted summary judgment in favor of the bank against United and in favor of United against the farmer. United appeals the summary judgment. We affirm.

## FACTS

Swift County Bank held a valid security interest in all grain sold during 1983 by Roger Berens, a farmer who was indebted to the bank for at least $40,463.35. Berens had a 14-year history of doing business with the bank. In prior years he sold grain in which the bank held a valid security interest and did not obtain the bank's express written authorization. Berens was paid by check for these sales; usually the check was payable to him individually but occasionally to him and the bank jointly. He deposited these checks in his account at Swift County Bank and used the proceeds to pay the bank and other creditors.

The security agreement in the present transaction provided that Berens would

"not sell or otherwise dispose of the collateral or any interest therein without the prior written consent of Secured Party [the bank]." On September 27, 1983, Berens sold grain to United and received a check for $20,707.70. Berens sold additional grain to United on October 5, 1983, for $19,755.65. Berens endorsed the checks and deposited them in his personal checking account at the bank.

Berens claims that after he deposited the first check, he informed his bank account supervisor that he was depositing the money he had received from sale of the grain. According to Berens, he gave the supervisor a list of bills he intended to pay with the grain proceeds, and after examining the list, the supervisor made no objection. The supervisor and another bank officer deny knowledge of the list and claim the bank has no record of it in its files. Berens subsequently depleted the account by writing a series of checks.

After Berens depleted the account, the bank sued United for conversion of the grain. The trial court granted summary judgment in favor of the bank against United and in favor of United against Berens, holding that (1) the bank's security interest continued in the grain because the bank had not given prior express approval for the sales, and (2) Berens' deposit of the proceeds in his personal account at the bank did not extinguish the bank's claim to the collateral.

## ISSUES

1. Does the Swift County Bank's past failure to object to Berens' unauthorized sale of secured grain constitute authorization to sell under the present security agreement?

2. Did Berens' deposit of the proceeds in his personal checking account at the bank satisfy the bank's security interest in the collateral?

3. Was the bank negligent in honoring Berens' checks written on the account when the bank knew the account contained proceeds of unauthorized sale of the collateral?

## ANALYSIS

### I

Under Minn.Stat. § 336.9–306(2) (Supp.1983) a security interest continues in collateral after sale unless the secured party authorizes the sale. Although buyers in the ordinary course of business take goods free of perfected security interests created by sellers, "a person buying farm products from a person engaged in farming operations" is specifically excepted. *See* Minn. Stat. § 336.9–307(1) (1982).

It is undisputed that United was buying a farm product from a person engaged in farming operations and that the bank did not give prior written consent for the sale. Therefore, unless invalidated under another theory of law, the bank's security interest in the grain would continue despite the sale to United.

To defeat the security interest, United argues that the bank's past failure to object to Berens' unauthorized sale of secured grain operates as a waiver of the bank's right to insist on strict adherence to the present agreement.

In *Wabasso State Bank v. Caldwell Packing Co.*, 251 N.W.2d 321 (Minn.1976), the supreme court considered whether evidence of a course of dealing could countermand specific terms in a written security agreement. There the bank had loaned a farmer funds to purchase feeder cattle and had taken a security interest in the cattle under an agreement that prohibited sale of the collateral without the bank's express prior written consent. The farmer sold the cattle to two meat packers without obtaining consent, and the bank sued the packers for conversion. The court rejected the argument that the bank authorized the sale by failing to object to prior unauthorized sales, relying on Minn.Stat. § 336.1–205(4), which provides that a course of dealing may be used to interpret terms of an agreement but not to contradict them. *See Wabasso*, 251 N.W.2d at 325.

United argues that this court should not apply the *Wabasso* rule in light of the

Minnesota Supreme Court's decision in *Cobb v. Midwest Recovery Bureau Co.,* 295 N.W.2d 232 (Minn.1980). In *Cobb* a buyer purchased a truck on an installment contract containing a clause that allowed immediate repossession for late payments and prohibited any except written amendments to the contract. The seller accepted late payments for several years but decided near the end of the contract term to invoke the late-payment clause and repossess the truck. The court held that the creditor/secured party's repeated acceptance of late payments imposed a duty on the creditor to notify the debtor that strict compliance with contract terms would be required before the creditor could lawfully repossess the collateral. *Id.* at 237.

■ Although *Cobb* generally supports the proposition that a secured party's past course of dealing with a debtor may affect its right to insist on strict compliance with contract terms, it is not inconsistent with the holding or rationale of *Wabasso.* *Cobb* was decided on a theory of detrimental reliance, which might be available to Berens but does not extend to United, which had no direct dealings with the bank. United claims no direct knowledge of the past course of dealing between the bank and Berens and cannot claim detrimental reliance based on that course of dealing. As the *Wabasso* court noted in facts very similar to the present case, "this is not a case of detrimental reliance since [the buyers] had no way of knowing whether or not the bank had reminded [the seller] of the necessity for prior approval of sales." *Wabasso,* 251 N.W.2d at 324. Swift County Bank is therefore not estopped from requiring prior written authorization to sell the collateral.

## II

United also contends that the bank received the proceeds of sale of the collateral when Berens deposited them in his personal checking account at the bank. Because a secured party is entitled to only one satisfaction, *see* Minn.Stat.Ann. § 336.9–306 U.C.C. comment 3 (West 1966), United argues that this "receipt" of proceeds satisfies the bank's claim to the collateral.

■ Funds deposited in a bank become the property of the bank, and a debtor/creditor relationship is established. *See, e.g., Rodgers v. Bankers' National Bank,* 179 Minn. 197, 210, 229 N.W. 90, 95 (1930). However, a general deposit of funds in a personal account is not equivalent to actual receipt of funds by the bank in payment of a debt. The Minnesota Supreme Court has recognized that "bank deposits are not loans in the ordinary sense, but rather and only banking 'transactions peculiar in the banking business, which the courts recognize and deal with according to commercial usage and understanding.'" *State v. Northwestern National Bank,* 219 Minn. 417, 492, 18 N.W.2d 569, 579–80 (1945) (emphasis omitted). Although the bank possesses funds deposited in checking accounts, it does not receive the funds in the sense for which Berens argues because it remains obligated to pay the money out on checks of depositors. *See Rodgers,* 179 Minn. at 210, 229 N.W. at 95. Berens'. deposit of the proceeds into his personal checking account did not satisfy the bank's security interest in the grain.

## III

United also argues that the bank was negligent in honoring checks drawn on Berens' account, which the bank knew contained proceeds from sale of the secured grain, because the bank had express notice that Berens intended to disburse the proceeds.

■ Banks have no general duty to monitor their depositors' checking accounts. *Rodgers,* 179 Minn. at 210, 229 N.W. at 95. The Minnesota Supreme Court has stated:

We cannot say that a bank ought, much less that it has a duty, to inquire minutely into the affairs of the depositor's checking account. * * * The bank is bound to honor the customer's checks unless it has at the time actual or constructive knowledge that the customer is then and there and by means thereof

intending to wrongfully divert the money.

*Id.*

Even assuming Berens communicated to the bank his intent to disburse the funds to others, this does not constitute "wrongful diversion" of funds. *Rodgers* involved the limited duty of a bank to prevent a fiduciary from misappropriating trust funds.

Swift County Bank has no such duty under the law of secured transactions. Under the Uniform Commercial Code as adopted in Minnesota, a secured party has no duty to monitor the status of its collateral. *See* Minn.Stat. § 336.9–205; *Wabasso*, 251 N.W.2d at 325 (bank did not authorize sale by failing to check periodically on status of collateral). Furthermore, the law imposes no superior duty to satisfy a security interest from the proceeds of sale as opposed to pursuing the collateral itself.

Our conclusion that the bank had no duty to act otherwise is supported by the fact that United was in the best position to protect its own interests. It had constructive knowledge of the bank's security interest and could have inquired as to whether the sale was authorized. *See Wabasso*, 251 N.W.2d at 324. Alternatively, it could have named Berens and the bank as joint payees on the checks. *See id.* We therefore hold as a matter of law that the bank was not negligent in honoring checks written on Berens' account.

## DECISION

Swift County Bank had a valid security interest in grain sold by Berens to United Farmers Elevators, and the trial court properly granted summary judgment to the bank.

Affirmed.